*182 Justice Stevens
delivered the opinion of the Court.
Petitioner Edward Jerome Harbison was sentenced to death by a Tennessee court in 1983. In 1997, after the state courts rejected challenges to his conviction and sentence, the Federal District Court appointed the Federal Defender Services of Eastern Tennessee to represent him in filing a petition for a writ of habeas corpus pursuant to 28 U. S. C. §2254.[1] During the course of that representation, counsel developed substantial evidence relating both to Harbison’s culpability and to the appropriateness of his sentence. Although the courts did not order relief, the evidence proved persuasive to one Circuit Judge. See 408 F. 3d 823, 837-846 (CA6 2005) (Clay, J., dissenting).
Shortly after his habeas corpus petition was denied, Harbison requested counsel for state clemency proceedings. In 2006, the Tennessee Supreme Court held that state law does not authorize the appointment of state public defenders as clemency counsel. State v. Johnson, No. M1987-00072SC-DPE-DD (per curiam), 2006 Tenn. Lexis 1236, *3 (Oct. 6, 2006). Thereafter, Harbison’s federally appointed counsel moved to expand the authorized scope of her representation to include state clemency proceedings. Relying on Circuit precedent construing 18 U. S. C. § 3599, which provides for the appointment of federal counsel, the District Court denied the motion, and the Court of Appeals affirmed. 503 F. 3d 566 (CA6 2007).
We granted certiorari, 554 U. S. 917 (2008), to decide two questions: (1) whether a certificate of appealability (COA) is required to appeal an order denying a request for federally appointed counsel pursuant to §3599, and (2) whether §3599(e)’s reference to “proceedings for executive or other clemency as may be available to the defendant” encompasses *183 state clemency proceedings. We conclude that a COA is not necessary and that §8599 authorizes federally appointed counsel to represent clients in state clemency proceedings.
I
We first consider whether Harbison was required to obtain a COA to appeal the District Court’s order. The State of Tennessee and the United States as amicus curiae agree with Harbison that he was not.
The District Court’s denial of Harbison’s motion to authorize his federal counsel to represent him in state clemency proceedings was clearly an appealable order under 28 U. S. C. § 1291. See, e. g., McFarland v. Scott, 512 U. S. 849 (1994) (reviewing the Court of Appeals’ judgment denying a petition for the appointment of counsel pursuant to the statute now codified at 18 U. S. C. § 3599). The question is whether Harbison’s failure to obtain a COA pursuant to 28 U. S. C. § 2253(c)(1)(A) deprived the Court of Appeals of jurisdiction over the appeal.
Section 2253(c)(1)(A) provides that unless a circuit justice or judge issues a COA, an appeal may not be taken from “the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court.” This provision governs final orders that dispose of the merits of a habeas corpus proceeding — a proceeding challenging the lawfulness of the petitioner’s detention. See generally Slack v. McDaniel, 529 U. S. 473, 484-485 (2000); Wilkinson v. Dotson, 544 U. S. 74, 78-83 (2005). An order that merely denies a motion to enlarge the authority of appointed counsel (or that denies a motion for appointment of counsel) is not such an order and is therefore not subject to the COA requirement.
II
The central question presented by this case is whether 18 U. S. C. § 3599 authorizes counsel appointed to represent a state petitioner in 28 U. S. C. § 2254 proceedings to represent *184 him in subsequent state clemency proceedings. Although Tennessee takes no position on this question, the Government defends the judgment of the Court of Appeals that the statute does not authorize such representation.
We begin with the language of the statute. Section 3599, titled “Counsel for financially unable defendants,” provides for the appointment of counsel for two classes of indigents, described, respectively, in subsections (a)(1) and (a)(2). The former states:
“[I]n every criminal action in which a defendant is charged with a crime which may be punishable by death, a defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services at any time either—
“(A) before judgment; or
“(B) after the entry of a judgment imposing a sentence of death but before the execution of that judgment;
“shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with subsections (b) through (f).”
Subsection (a)(2) states:
“In any post conviction proceeding under section 2254 or 2255 of title 28, United States Code, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with subsections (b) through (f).”
The parties agree that subsections (a)(1) and (a)(2) make two different groups eligible for federally appointed counsel: Subsection (a)(1) describes federal capital defendants, while subsection (a)(2) describes state and federal postconviction *185 litigants, as indicated by its reference to both §2254 and § 2255 proceedings.[2]
After subsections (b) through (d) discuss counsel’s necessary qualifications, subsection (e) sets forth counsel’s responsibilities. It provides:
“Unless replaced by similarly qualified counsel upon the attorney’s own motion or upon motion of the defendant, each attorney so appointed shall represent the defendant throughout every subsequent stage of available judicial proceedings, including pretrial proceedings, trial, sentencing, motions for new trial, appeals, applications for writ of certiorari to the Supreme Court of the United States, and all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant” (Emphasis added.)
Focusing on the italicized clause of subsection (e), Harbison contends that the plain language of the statute dictates the outcome of this case. We are persuaded by his argument.
Under a straightforward reading of the statute, subsection (a) (2) triggers the appointment of counsel for habeas petitioners, and subsection (e) governs the scope of appointed counsel’s duties. See § 3599(a)(2) (stating that habeas petitioners challenging a death sentence shall be entitled to “the furnishing of . . . services in accordance with subsections (b) through (f)”). Thus, once federally funded counsel is appointed to represent a state prisoner in §2254 proceedings, she “shall also represent the defendant in such . . . proceedings for executive or other clemency as may be available to the defendant.” §3599(e). Because state clemency proceedings are “available” to state petitioners who obtain *186 representation pursuant to subsection (a)(2), the statutory-language indicates that appointed counsel’s authorized representation includes such proceedings.
The Government contends that, fairly read, the statute as a whole is intended to furnish representation only in federal proceedings and that all proceedings listed in subsection (e), including clemency proceedings, should be understood to be federal. The absence of the word “federal” in this subsection is not dispositive, it maintains, because subsection (a)(1) likewise does not use the word “federal” yet the parties agree that provision concerns only federal defendants. Just as “federal” is implied by context in subsection (a)(1), so too, the Government says, is it implied in subsection (e). According to the Government, the repeated use of the word “available” supports this reading: Congress contemplated that not all catalogued proceedings would be available to any given client, and clemency proceedings are simply not available to state petitioners because they are ineligible for federal clemency.
The Government’s argument is not convincing. Subsection (a)(1) is properly understood as describing federal defendants because the statute is primarily concerned with federal criminal actions[3] and (a)(1) includes no language suggesting that it applies more broadly. By contrast, subsection (a)(2) refers to state litigants, and it in turn provides that subsection (e) applies to such litigants. There is therefore no basis for assuming that Congress intended “proceedings for executive or other clemency as may be available to the defendant” in subsection (e) to indicate only federal clemency.
To the contrary, the reference to “proceedings for executive or other clemency,” § 3599(e) (emphasis added), reveals *187 that Congress intended to include state clemency proceedings within the statute’s reach.[4] Federal clemency is exclusively executive: Only the President has the power to grant clemency for offenses under federal law. U. S. Const., Art. II, § 2, cl. 1.[5] By contrast, the States administer clemency in a variety of ways. See, e. g., Ga. Const., Art. IV, § 2 (independent board has clemency authority); Nev. Const., Art. 5, § 14 (governor, supreme court justices, and attorney general share clemency power); Fla. Const., Art. IV, §8 (legislature has clemency authority for treasonous offenses); McLaughlin v. Bronson, 206 Conn. 267, 271, 537 A. 2d 1004, 1006-1007 (1988) (“In Connecticut, the pardoning power is vested in the legislature, which has delegated its exercise to the board of pardons” (citation omitted)). Congress’ reference to “other clemency” thus does not refer to federal clemency but instead encompasses the various forms of state clemency.[6]
*188 The Government’s reliance on the word “available” is also misplaced. While it maintains that Congress’ repeated use of the word shows that various § 3599(e) procedures do not apply to particular indigents, the term instead indicates the breadth of the representation contemplated. The directive that counsel “shall represent the defendant throughout every subsequent stage of available judicial proceedings, including ... all available post-conviction process,” for example, hardly suggests a limitation on the scope of representation.
The Government is correct that appointed counsel is not expected to provide each service enumerated in subsection (e) for every client. But that limitation does not follow from the word “available”; it follows from the word “subsequent” and the organization of subsection (e) to mirror the ordinary course of proceedings for capital defendants. Counsel’s responsibilities commence at a different part of subsection (e) depending on whether she is appointed pursuant to subsection (a)(1)(A), (a)(1)(B), or (a)(2). When she is appointed pursuant to (a)(1)(A), she is charged with representing her client in all listed proceedings. When she is appointed pursuant to (a)(1)(B) (i. e., after the entry of a federal death sentence), her representation begins with “appeals.” And when she is appointed pursuant to (a)(2), her representation begins with the §2254 or §2255 “post-conviction process.” Thus, counsel’s representation includes only those judicial proceedings transpiring “subsequent” to her appointment. It is the sequential organization of the statute and the term “subsequent” that circumscribe counsel’s representation, not a strict division between federal and state proceedings.
Ill
In an attempt to overcome the plain language of § 3599, the Government advances two additional arguments that merit discussion. First, it contends that a literal reading of subsection (e) would lead to unacceptable results: It would re *189 quire a federal lawyer who obtained relief for her client in §2254 proceedings to continue to represent him during his state retrial; similarly, it would require federal counsel to represent her client in any state habeas proceeding following her appointment. Second, the Government claims that the statute’s legislative history shows that Congress did not intend to include state clemency proceedings within § 3599(e)’s coverage. Neither argument is persuasive.
The Government suggests that reading § 3599(e) to authorize federally funded counsel for state clemency proceedings would require a lawyer who succeeded in setting aside a state death sentence during postconviction proceedings to represent her client during an ensuing state retrial. We do not read subsection (e) to apply to state-court proceedings that follow the issuance of a federal writ of habeas corpus. When a retrial occurs after postconviction relief, it is not properly understood as a “subsequent stage” of judicial proceedings but rather as the commencement of new judicial proceedings. Moreover, subsection (a)(2) provides for counsel only when a state petitioner is unable to obtain adequate representation. States are constitutionally required to provide trial counsel for indigent defendants. Thus, when a state prisoner is granted a new trial following §2254 proceedings, his state-furnished representation renders him ineligible for §3599 counsel until the commencement of new §2254 proceedings.
The Government likewise argues that our reading of § 3599(e) would require federally funded counsel to represent her client in any state habeas proceeding occurring after her appointment because such proceedings are also “available post-conviction process.” But as we have previously noted, subsection (e) authorizes counsel to represent her client in “subsequent” stages of available judicial proceedings. State habeas is not a stage “subsequent” to federal habeas. Just the opposite: Petitioners must exhaust their claims in state court before seeking federal habeas relief. See § 2254(b)(1). *190 That state postconviction litigation sometimes follows the initiation of federal habeas because a petitioner has failed to exhaust does not change the order of proceedings contemplated by the statute.[7]
The Government also argues that § 3599(e) should not be interpreted as including state clemency proceedings because it was drafted to apply only to federal defendants. Section 3599 was originally enacted as part of the Anti-Drug Abuse Act of 1988, § 7001(b), 102 Stat. 4388 (codified at 21 U. S. C. §§848(q)(4)-(10)), which created a federal capital offense of drug-related homicide. In 2006, the death penalty procedures specified in that Act were repealed and recodified without change at 18 U. S. C. §3599. Based on the 1988 legislative history, the Government argues that subsection (e) was not written to apply to state petitioners at all. In its telling, the subsection was drafted when the bill covered only federal defendants; state litigants were added, by means of what is now subsection (a)(2), just a few hours before the bill passed in rushed end-of-session proceedings; and Congress simply did not attend to the fact that this amendment applied what is now subsection (e) to state litigants.
While the legislative history is regrettably thin, the evidence that is available does not support the Government’s argument. State petitioners were a part of the Anti-Drug Abuse Act from the first day the House of Representatives took up the bill. In the amendment authorizing the death penalty for drug-related homicides, Representative George Gekas included a provision that closely resembles the current § 3599(a)(2): “In any post-conviction proceeding under section 225U or 2255 of title 28, United States Code, seeking to va *191 cate or set aside a death sentence, the court shall appoint counsel to represent any defendant who is or becomes financially unable to obtain adequate representation.” 134 Cong. Rec. 22984 (1988) (emphasis added).
Following passage of the Gekas amendment, Representative John Conyers proposed replacing its provisions on appellate and collateral process (including the above-quoted provision) with language comprising the provisions now codified at §§ 3599(a)(1), (b), (c), and (e). Because his amendment introduced the § 3599(e) language and did not refer specifically to § 2254 proceedings, the Government and Justice Scalia argue that Representative Conyers drafted subsection (e) to apply only to federal defendants. But his floor statements evince his particular concern for state prisoners. He explained that his amendment filled a gap because “[w]hile State courts appoint lawyers for indigent defendants, there is no legal representation automatically provided once the case i[s] appealed to the Federal level.” Id., at 22996.[8] He then cited discussions by the Chief Judge of the Eleventh Circuit and the NAACP devoted exclusively to errors found by federal courts during habeas corpus review of state capital cases. Ibid.
In the Senate, Representative Conyers’ language was first replaced with Representative Gekas’ provision for counsel for §2254 and §2255 petitioners, and then a subsequent amendment substituted the text of the Conyers amendment. See id., at 30401,30746. Thereafter, the House amended the bill a final time to insert the language now codified at *192 § 3599(a)(2) while leaving the Conyers language in place. See id., at 33215. The Government argues that this late amendment marked the first occasion on which state prisoners were brought within the bill’s compass. But Representative Gekas' initial amendment explicitly referenced §2254 petitioners, and Representative Conyers’ proposal sought to provide additional protections for all capital defendants. The House’s final amendment is therefore best understood not as altering the bill’s scope, but as clarifying it.
The Government’s arguments about §3599’s history and purposes are laced with the suggestion that Congress simply would not have intended to fund clemency counsel for indigent state prisoners because clemency proceedings are a matter of grace entirely distinct from judicial proceedings.[9] As this Court has recognized, however, “[cjlemency is deeply rooted in our Anglo-American tradition of law, and is the historic remedy for preventing miscarriages of justice where judicial process has been exhausted.” Herrera v. Collins, 506 U. S. 390, 411-412 (1993) (footnote omitted). Far from regarding clemency as a matter of mercy alone, we have called it “the ‘fail safe’ in our criminal justice system.” Id., at 415.[10]
*193 Congress’ decision to furnish counsel for clemency proceedings demonstrates that it, too, recognized the importance of such process to death-sentenced prisoners, and its reference to “other clemency,” § 3599(e), shows that it was familiar with the availability of state as well as federal clemency proceedings. Moreover, Congress’ sequential enumeration suggests an awareness that clemency proceedings are not as divorced from judicial proceedings as the Government submits. Subsection (e) emphasizes continuity of counsel, and Congress likely appreciated that federal habeas counsel are well positioned to represent their clients in the state clemency proceedings that typically follow the conclusion of §2254 litigation.
Indeed, as the history of this case demonstrates, the work of competent counsel during habeas corpus representation may provide the basis for a persuasive clemency application. Harbison’s federally appointed counsel developed extensive information about his life history and cognitive impairments that was not presented during his trial or appeals. She also litigated a claim under Brady v. Maryland, 373 U. S. 83 (1963), based on police records that had been suppressed for 14 years. One Court of Appeals judge concluded that the nondisclosure of these records “undermine[d] confidence in Harbison’s guilty verdict” because the evidence contained therein could have supported a colorable defense that a third party murdered the victim and that Harbison’s codefendant falsely implicated him. 408 F. 3d, at 840 (Clay, J., dissenting). Although the Court of Appeals concluded that Harbison’s Brady claim was procedurally defaulted, the information contained in the police records could be marshaled together with information about Harbison’s background in a *194 clemency application to the Tennessee Board of Probation and Parole and the Governor.
Harbison’s case underscores why it is “entirely plausible that Congress did not want condemned men and women to be abandoned by their counsel at the last moment and left to navigate the sometimes labyrinthine clemency process from their jail cells.” Hain v. Mullin, 436 F. 3d 1168, 1175 (CA10 2006) (en banc). In authorizing federally funded counsel to represent their state clients in clemency proceedings, Congress ensured that no prisoner would be put to death without meaningful access to the “ ‘fail-safe’ ” of our justice system. Herrera, 506 U. S., at 415.
IV
We conclude that a COA is not required to appeal an order denying a motion for federally appointed counsel. We further hold that § 3599 authorizes federally appointed counsel to represent their clients in state clemency proceedings and entitles them to compensation for that representation. Accordingly, the judgment of the Court of Appeals is reversed.

It is so ordered.

 Federal Defender Services of Eastern Tennessee is a nonprofit organization established pursuant to the Criminal Justice Act of 1964, 18 U. S. C. §3006A(g)(2)(B).

 We note that §3599 uses the term “defendant” to describe postconviction litigants.

 As we discuss below, §3599 was originally enacted as part of a statute creating a new federal capital offense, Anti-Drug Abuse Act of 1988, § 7001(b), 102 Stat. 4388, and it is now codified in Title 18, which principally addresses federal criminal proceedings.

 Justice Scaua argues that subsection (e), including the reference to “other clemency,” was drafted to apply only to federal defendants, but this is not correct, as we discuss infra, at 190-193.

 The Government suggests that Congress might have referred to “other clemency” to encompass the Executive’s use of other persons to assist him in reviewing clemency applications. But as the Government concedes, see Tr. of Oral Arg. 43 — and as Members of Congress would have known— regardless of what assistance the President seeks, the federal proceeding is one for executive clemency under the Constitution.

 We also note that the Government’s proposal to read the word “federal” into § 3599(e) would lead to absurd results. It is clear, for example, that a state inmate faced with an imminent execution might be required to apply for a stay from a state court before seeking such relief in a federal court. On our reading of the statute, federally appointed counsel would be permitted to represent her client pursuant to subsection (e)’s reference to “applications for stays of execution and other appropriate motions and procedures.” But on the Government’s reading, the inmate would have to secure new counsel to file the stay request because his federal counsel would not be authorized to represent him. Such a rigid limit on the authority of appointed federal counsel would be inconsistent with the basic purpose of the statute. Cf. McFarland v. Scott, 512 U. S. 849, 854-857 (1994).

 Pursuant to §3599(e)’s provision that counsel may represent her client in “other appropriate motions and procedures,” a district court may determine on a case-by-case basis that it is appropriate for federal counsel to exhaust a claim in the course of her federal habeas representation. This is not the same as classifying state habeas proceedings as “available post-conviction process” within the meaning of the statute.

 Despite his reference to “defendants” and “appealed,” Representative Conyers was clearly discussing state prisoners seeking federal habeas relief. Representative Gekas’ amendment similarly referred to postconviction litigants as “defendants,” and the relevant portion of his amendment was titled “Appeal in Capital Cases” even though it incorporated §2254 and §2255 proceedings. 134 Cong. Rec. 22984. As codified, § 3599(a)(2) likewise uses the term “defendant” to refer to habeas petitioners. The Government is incorrect to suggest that the statute’s use of this term illustrates that it was not written to apply to postconviction litigants.

 The Government also submits that providing federally funded counsel for state clemency proceedings would raise “unique federalism concerns.” Brief for United States as Amicus Curiae 31. But Tennessee’s position belies that claim. Following other States that have litigated the question, Tennessee has expressed “no view” on the statute’s scope because it “has no real stake in whether an inmate receives federal funding for clemency counsel.” Brief for Respondent 7; see also Brief for Current and Former Governors as Amici Curiae 18 (“Contrary to the view of the Solicitor General..., the fact that counsel is appointed by a federal court does not reflect an intrusion on state sovereignty”).

 See also Kansas v. Marsh, 548 U. S. 163, 193 (2006) (Scalia, J., concurring) (“Reversal of an erroneous conviction on appeal or on habeas, or the pardoning of an innocent condemnee through executive clemency, demonstrates not the failure of the system but its success. Those devices are part and parcel of the multiple assurances that are applied before a death *193 sentence is carried out”); Dretke v. Haley, 541 U. S. 386, 399 (2004) (Kennedy, J., dissenting) (“Among its benign if too-often ignored objects, the clemency power can correct injustices that the ordinary criminal process seems unable or unwilling to consider”).