# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

April 21, 2010

No. 10-50348

Lyle W. Cayce
Clerk

In re: WILLIAM JOSEF BERKLEY,

Movant

Order Denying Motion to Authorize
Second Petition for Writ of Habeas Corpus
under 28 U.S.C. § 2244

Before JOLLY, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

William Josef Berkley is scheduled to be executed by the State of Texas on April 22, 2010.  Berkley moves this Court for a stay of execution and an order authorizing the filing and consideration of a second petition for writ of habeas corpus, under 28 U.S.C. § 2244(b)(3)(C).  After considering Berkley's arguments, we DENY both motions.

The facts of this case have been documented in previous opinions by this Court, *Berkley v. Quarterman*, 310 F. App'x 665 (5th Cir. 2009) (unpublished) (per curiam), and the district court, *Berkley v. Quarterman* (*Berkley I*), 507 F.

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-50348

Supp. 2d 692 (W.D. Tex. 2007).  We repeat the facts here only as they directly affect the instant motions.

Sophia Martinez stopped at an ATM to make a withdrawal.  *Berkley I*, 507 F. Supp. 2d at 702.  Bank security cameras recorded a male with a handgun who approached Martinez's vehicle; shot into the vehicle, apparently wounding Martinez in the head or face; and got in her car, which subsequently drove away. *Id*. at 702–03.  Before trial, Berkley made two confessions.  *Id*. at 703–04.  At trial, the district court admitted portions of those confessions which established Berkley's account of the events that transpired on the night of Martinez's death: "his gun went off as he approached Martinez's vehicle"; he "entered her vehicle . . . and directed her to drive her vehicle away from the ATM to a deserted area"; when they reached the deserted area, she "initiated multiple episodes of sexual relations between them"; his gun discharged "when she attempted to hug him"; "he passed out and did not wake up for several hours"; when he awoke, he saw Martinez lying on the ground; "he 'freaked out' and drove her car to another part of the desert where he drove it off the road" and "he then walked home."  *Id*. Police found Martinez's body the next day.  *Id*. at 703.

In the instant motions, Berkley does not argue against the admission or content of his confessions or the ATM video.  Instead, he argues that the State used a now-discredited theory to connect three bullets recovered from Martinez's body and one found in the desert nearby, to a bullet recovered during a search of Berkley's residence.  At trial, an FBI forensic examiner used the theory of Comparative Bullet Lead Analysis ("CBLA") when she testified that all five bullets were manufactured from the same "pot" of lead.  The FBI has since acknowledged that this sort of testimony is problematic because it might lead a jury to believe that a "pot" is very small—perhaps as small as a box of ammunition—when in reality a pot might be much larger, thus diluting or negating its probative value.  Berkley argues that the admission of this CBLA

No. 10-50348

testimony amounted to a violation of his constitutional rights under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972), and that he is actually innocent of capital murder. At the very least, Berkley argues that he has made a prima facie showing sufficient for this Court to authorize the filing of a second habeas application in the district court.

Under § 2244(b)(3)(C), "[t]he court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection." Here, Berkley must make a prima facie showing that "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence," and that "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found [Berkley] guilty of the underlying offense." 28 U.S.C. § 2244(b)(2)(B).

Assuming that Berkley can make a prima facie showing that the flaws in the prosecution's bullet analysis could not have been discovered previously through the exercise of due diligence, his claim still fails because he does not make a prima facie showing that but for the flawed bullet analysis, no reasonable factfinder would have found him guilty of capital murder. In fact, the CBLA testimony went to the gun's presence at and use in the crime, and was not used to prove that Berkley actually fired the gun. Given the strength of the State's case, we cannot say that without the CBLA testimony no reasonable factfinder would have found him guilty of capital murder. Berkley's own confessions, combined with the video from the ATM, establish that he approached Martinez at the ATM; that he shot into her car, apparently wounding her in the head; that they drove to a deserted area; that they had sexual relations; and that his gun discharged at least one more time.

No. 10-50348

Accordingly, we DENY Berkley's motions for a stay of execution and an order authorizing the filing and consideration of a second petition for writ of habeas corpus.

No. 10-50348

DENNIS, Circuit Judge, specially concurring:

I concur in the denial of Berkley's motions for authorization to file a successive habeas petition and for a stay of execution. The only issue presented to this panel is whether Berkley satisfies the exacting standard for authorization of a successive habeas petition under 28 U.S.C. § 2244 and thus is entitled to a stay to pursue this claim. The order accurately captures why, in light of Berkley's arguments, he has not met this standard.

Nonetheless, I write separately to call attention to an issue of grave concern raised by the proceedings in Berkley's case. In the weeks prior to the instant filing, this court was informed by Berkley's counsel that they would not be pursuing clemency or other non-habeas remedies or stays of execution that might be available to Berkley, as they were "appointed solely for the purpose of the federal habeas case." This statement appears to rely upon the wording of the district court's order appointing counsel. That order assigned counsel to represent Berkley in his "federal habeas corpus proceeding." Order of Mar. 31, 2006.

However, the statute under which Berkley's counsel were appointed, 18 U.S.C. § 3599, has recently been construed by the Supreme Court in *Harbison v. Bell*, 129 S. Ct. 1481 (2009), to contain a broader obligation of representation.[1] The Court indicated that the plain language of 18 U.S.C. § 3599(e)—requiring

---

[1] I note that in originally appointing counsel, the district court purported to do so pursuant to 21 U.S.C. § 848(q). Order of Mar. 31, 2006. However, this statute no longer existed at the time. It had been replaced by 18 U.S.C. § 3599, which has not since been substantively amended. USA Patriot Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, tit. II, §§ 221-222, 120 Stat. 231 (Mar. 9, 2006); Judicial Administration and Technical Amendments Act of 2008, Pub. L. No. 110-406, § 12(c), 122 Stat. 4294 (Oct. 13, 2008) (amending 18 U.S.C. § 3599(g) to allow the chief judge of any circuit to delegate his or her authority to approve expenses associated with representation under the statute to a "senior" judge, in addition to an active judge, who was already allowed to be a designee of the chief judge under the statute). *See also Harbison*, 129 S. Ct. at 1487 n.3 (noting this legislative history). Therefore, the district court must have intended to appoint counsel pursuant to 18 U.S.C. § 3599 and *Harbison*'s analysis of the statute is directly on point.

No. 10-50348

that each attorney appointed under the statute "shall represent the defendant throughout every subsequent stage of available judicial proceedings, including . . . all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant"—controls any interpretation of counsels' duties under the statute. *See Harbison*, 129 S. Ct. at 1486. Thus, the Court held that federally appointed counsel are "authorize[d] . . . to represent their clients in [available] state clemency proceedings" and are "entitle[d] . . . to compensation for that representation." *Id*. at 1491.

Yet, following *Harbison,* we have not had occasion to make clear whether counsel can be provided a narrower appointment, as may have been done in the instant case, than the broader representation described in *Harbison*. This leaves an untenable gap in our jurisprudence and in the high level of procedural protections we should afford death penalty–eligible defendants. Without knowing our understanding of *Harbison,* counsel like those in this case could reasonably interpret their mandate as ending once their client's federal habeas proceedings have concluded, even though this appears to be contrary to the Supreme Court's articulation of 18 U.S.C. § 3599's demands. At the same time, defendants are left without a clear conception of their rights or remedies in light of *Harbison*.

Therefore, I write separately to call attention to the evident duty of federally appointed counsel to represent death row inmates in state clemency proceedings in order to ensure "that no prisoner [will] be put to death without meaningful access to the 'fail-safe' of our justice system." *Harbison*, 129 S. Ct. at 1491 (quoting *Herrera v. Collins*, 506 U.S. 390, 415 (1993)). If my reading of *Harbison* is correct, federally appointed counsel must timely seek clemency for

No. 10-50348

a death row inmate who requests such a petition. *See* 37 Tex. Admin. Code § 143.43 (stating clemency petitions must be filed 21 days prior to an execution).