PELOQUIN, Judge,
concurring in part and dissenting in part:
I join with Judge Saragosa concurring with the majority’s opinion except as to its finding that the appellant failed to demonstrate ineffective assistance of counsel in the sentencing phase of his court-martial. Because I believe trial defense counsel were ineffective by failing to investigate and present evidence of the appellant’s remorse, closed-head injury, and mother’s mental health records, I would set aside the sentence and remand this case for a new sentencing hearing. I write separately to address the lack of minimum qualification requirements within the military justice system for counsel defending a military member facing the death penalty — requirements of experience and training that, in my estimation, may well have precluded trial defense counsel’s errors.
Our superior courts remind us often that death is different. The absolute finality of the decision to execute appropriately drives layers of safeguards and review to ensure the propriety, equity, and fairness of the punishment with as high a degree of certainty a system managed and implemented by human beings can muster.
To underscore Judge Saragosa’s opinion, we should note Justice Brennan’s words in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), describing the unique nature of the sentencing phase of a capital case and the Supreme Court’s heightened attention to such proceedings:
[T]he consequences to the defendant of incompetent assistance at a capital sentencing could not, of course, be greater.
Because of the basic difference between the death penalty and all other punishments, this Court has consistently recognized that there is a corresponding difference in the need for reliability in the *841 determination that death is the appropriate punishment in a specific ease.
In the sentencing phase of a capital case, what is essential is that the jury have before it all possible relevant information about the individual defendant whose fate it must determine. For that reason, we have repeatedly insisted that the sentencer in capital cases must be permitted to consider any relevant mitigating factor.
Strickland, 466 U.S. at 704-05, 104 S.Ct. 2052 (Brennan, J., concurring in part and dissenting in part) (emphasis added) (citations, alterations, and internal quotation marks omitted). And it is the capital defendant’s counsel who are best positioned, and ultimately responsible, for ensuring “all possible relevant information” and “any relevant mitigating factor” is presented to the sentencing authority for consideration.
The Strickland standard for assessing ineffective assistance of counsel, reiterated in Wiggins v. Smith, 539 U.S. 510, 534, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), provides:
The defendant must show that there is a reasonable probability that, but for the counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
Strickland, 466 U.S. at 694, 104 S.Ct. 2052 (emphasis added).
Judge Saragosa’s dissent articulately and accurately discusses trial defense counsel’s failures in developing and presenting the appellant’s sentencing ease and the resulting prejudice. A sentence to death must be by unanimous vote of the members. We cannot know what deliberations or discussions took place among the members; nor can we know what sentences may have been proposed by one or more members; nor can we know the vote count for any sentence other than death, if one was proposed.
We do know that a sentence to death was voted on, and the vote for death was unanimous. We know that several pieces of mitigating evidence were not presented in sentencing. We know that this evidence was championed by the defense team’s mitigation expert. We know that trial defense counsel disregarded their mitigation expert’s advice, even after having to abandon their planned sentencing tactics and strategy. We know that each member of this Court has determined that some or all of this mitigating evidence is relevant. And we know one vote not in favor of death would result in a different outcome.
Trial defense counsel’s failure to investigate and present this mitigating evidence deprived the sentencer of the opportunity to consider all possible relevant information. Without this evidence before the sentencer, “a reasonable probability [of a different result] sufficient to undermine confidence in the outcome” is most certainly raised. Strickland, 466 U.S. at 694, 104 S.Ct. 2052. Had trial defense counsel performed in a more diligent manner, and given due regard and deference to their highly experienced capital mitigation expert, one could espouse confidence in the outcome knowing the members had all relevant mitigation evidence before them to consider before rendering a sentence. See Id. at 705, 104 S.Ct. 2052 (Brennan, J., concurring in part and dissenting in part).
With that said, the root cause of this prejudice and the root cause for this lack of confidence in the outcome is trial defense counsel’s lack of competence, lack of qualifications, and lack of experience.
This court-martial was convened in accordance with the UCMJ and the Manual for Courts-Martial (MCM), United States (2005 ed.). The UCMJ and the Manual mandate the provision of defense counsel to an accused and outline basic requirements for detailing such counsel. See Article 27, UCMJ, 10 U.S.C. § 827; Rules for Court-Martial (R.C.M.) 501, 502, 503, and 506. See also AFI 51-201, Administration of Military Justice, ¶¶ 5.2-5.3 (26 November 2003); AFI 51-201, ¶¶ 5.3-5.5 (6 June 2013). These authorities provide that trial defense counsel may be detailed from any branch of military service to defend a servicemember, and that civilian counsel may represent an accused provided no expense accrues to the Government. However, aside from designation and *842 initial certification of counsel, no further training or experience is required before military counsel may represent an accused in a capital case. Similarly, no training or experience, other than Federal or State bar membership, is required before a civilian counsel may defend a capital case at court-martial.
To date, our superior court has elected to not involve itself in mandating, endorsing, or recommending minimum qualifications and experience levels for counsel providing representation in capital trials. See United States v. Gray, 51 M.J. 1, 54 (C.A.A.F.1999) (“[W]e again decline the invitation to establish such a [minimum] standard on our own.”); United States v. Murphy, 50 M.J. 4, 9-10 (C.A.A.F. 1998) (“[W]e have chosen the route illuminated by the Supreme Court in United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), .... [, which] compels us to look at the adequacy of counsels’ performance, rather than viewing the limited experience of counsel as an inherent deficiency.”); United States v. Loving, 41 M.J. 213, 300 (C.A.A.F.1994) (“[W]e decline to mandate minimum standards based on years of practice or numbers of eases tried”).
Nevertheless, our superior court has recognized the court’s role of “remaining] vigilant as to the quality of representation provided servieemembers in capital cases in the military justice system.” Gray, 51 M.J. at 54. Addressing a due process argument for minimum qualifications, the Gray court went on to say: “[D]espite 21 U.S.C. § 848(q)(5)-(7),[54] the few state authorities cited by appellant in his brief, and the American Bar Association Guidelines, we are not persuaded that ‘[c]ontemporary practice’ demonstrates a ‘settled view’ on this question.” Id.
We do not know what “few state authorities” were cited by the appellant in Gray in 1999. However, we do know that today 34 jurisdictions in the United States, including the United States military, retain the death penalty within them penal codes.[55] Of those 34 jurisdictions, 24 have adopted and articulated minimum qualification and experience standards for counsel appointed to represent defendants facing the death penalty.[56] Using 2013 data as a yardstick,- in October 2013 there were 3,088 inmates on death row in the United States.[57] The 24 jurisdictions with minimum counsel standards accounted for 2,901 of these inmates.
The minimum qualification standards vary among those 24 jurisdictions. The standards *843 require anywhere from 3 years’ criminal litigation experience to 10 years’ criminal litigation experience, with the majority of the jurisdictions requiring no less than 5 years’ criminal litigation experience. Of the 24 jurisdictions, 18 mandate lead defense counsel have capital trial experience and/or significant murder trial experience.[58] Those 18 jurisdictions account for nearly 2,600 of those 3,088 inmates on death row.
Those jurisdictions most active in trying capital eases, and most experienced in trying capital cases, have deemed it appropriate and necessary to create, adopt, and implement minimum qualification and experience standards for counsel defending capital cases. Presumably, these standards have been adopted in light of the uniqueness of capital litigation, the significant consequences in play, and these jurisdictions’ experience gained over the course of their extensive capital practice.
This data suggests that the landscape of “contemporary practice” has changed since the Gray court spoke. With the jurisdictions representing 94% of death row inmates having adopted minimum qualification standards for capital defense counsel, it would seem a “settled view” has been reached that such standards are to be commended.
As noted above, under the UCMJ and the Manual there are no minimum qualification standards for counsel appointed to defend a capital case aside from certification under Article 27, UCMJ. In the United States Air Force Judge Advocate General’s Corps, that certification is met after completion of a 9-week staff officer course and serving as assistant trial counsel or trial counsel in a handful of courts-martial.[59] In the Air Force, the authority to detail defense counsel has been delegated from The Judge Advocate General to the Chief, Trial Defense Division and other delegees. AFI 51-201, ¶ 5.2 (26 November 2003); AFI 51-201, ¶5.3 (6 June 2013), see also R.C.M. 503.
In the instant case, the Government opted to detail two trial defense counsel to the appellant. When he was assigned to defend the appellant, the senior military defense counsel, Captain (Capt) DR, had been a member of the bar for two-and-a-half years, had prosecuted six cases of unknown complexity, and had served as a trial defense counsel for twelve months, defending nine cases. He had no capital trial experience and little training on the subject of capital trials[60] prior to being detailed. The assisting military defense counsel, Capt DJ, had been a member of the bar for less than three years, had prosecuted 14-15 cases of unknown complexity, and had never served as a trial defense counsel prior to his assignment to the appellant’s defense team. He had no capital trial experience or training prior to being detailed.
The appellant, of his own accord, procured the services of a private attorney, Mr. FS. Mr. FS had been practicing law for 25 years with significant trial and appellate defense experience in courts-martial. However, he had no capital trial or capital appellate-level experience. As the lead counsel, he determined the division of labor among the de *844 fense legal team. While he focused primarily on the findings phase of the court-martial and preparing a defense against the allegations of premeditated murder, Capt DR was assigned primary responsibility for preparing the sentencing case.
None of the appellant’s attorneys met the minimum qualification standards required of capital defense counsel, specific bar admission aside, as adopted in 18 jurisdictions which account for over 80% of the capital cases in the United States. And lead counsel for the appellant’s sentencing ease did not meet the minimum qualification standards in any of 24 jurisdictions with minimum qualification standards accounting for 94% of the capital cases in the United States. In fact, none of the appellant’s trial defense counsel met the minimum statutory qualifications governing counsel appointed to defend in federal capital cases. See 18 U.S.C. § 3005 (requiring at least one court-appointed counsel to be “learned in the law applicable to capital cases”); see also Guidelines for the Administration of the Criminal Justice Act, vol. 7, pt. A, ch. 6, § 620.30.
To be fair, Capt DR, Capt DJ, and Mr. FS certainly appear to be capable, conscientious attorneys who worked diligently and tirelessly to defend their client. But in light of the import the overwhelming majority of capital jurisdictions accord to minimum standards for capital defense counsel, it strains credibility to conclude their judgment, efforts, and decisions were not handicapped by their own lack of training and experience.
“Confidence in the outcome” is necessarily tied to confidence in the process by which the outcome was reached. In reviewing counsel’s performance, we have only the record of trial and the appellate briefs to consider. We cannot know what conversations trial defense counsel did not have, or what avenues, tactics or strategies were never considered in light of their inexperience and lack of training.
This proceeding was defended by inexperienced counsel, presided over by a trial judge with no capital experience, in a jurisdiction that has little experience in trying capital cases.[61] If we are to “remain vigilant as to the quality of representation provided ser-vicemembers in capital cases in the military justice system,” we cannot ignore the trial practice in the overwhelming majority of our Nation’s capital jurisdictions. We cannot dismiss the cumulative wisdom and experience of those jurisdictions as we review the capital practice in the military justice setting generally, and in this case specifically. In light of the attorney qualification standards that guide capital defense across the Nation, and in light of these trial defense counsel’s performance, my confidence in the process that brought about the outcome, and in the outcome itself, is undermined.
Exercising vigilance, as commended by our superior court, we can find a number of avenues which could be pursued to ensure capital courts-martial are defended by the high standards the rest of the Nation demands. I suggest, and invite my colleagues’ concurrence, that the most prudent and efficient course of action would be for the services to adopt the “learned counsel” capital defense counsel standards already established for other Federal jurisdictions.[62] Understandably, given the limited capital practice of the services, it may prove difficult for the service TJAGs to train and retain military counsel who meet this “learned counsel” criteria. It would seem a cooperative effort between the services, the Federal Office of Defender Services, and the Federal Death Penalty Resource Counsel Project, may provide the services with access to capital certified counsel already employed by the federal government.
As guardians of justice, we ought not sit idly by and allow servicemembers to be represented at a capital trial with any less vigor or expertise than that accorded to the rest of our Nation’s populace. While our courts do *845 show deference to military commanders and the chain of command in many aspects of military discipline and military affairs, such deference is not unlimited. In the matter of a capital trial, I am unable to conceive a reasonable argument supporting such disparity, or even potential for such disparity, in defense representation standards applied to courts-martial as compared to civilian jurisdictions.

. 21 U.S.C. § 848(q)(5)-(7) (repealed 2006 and recodified as 18 U.S.C. § 3599(b)-(d)), requires attorneys appointed for indigent defendants in capital cases at trial or on appeal to have a minimum amount of felony trial or felony appeal experience, respectively. Additionally, the court is also authorized to appoint "another attorney whose background, knowledge, or experience would otherwise enable him or her to properly represent the defendant, with due consideration to the seriousness of the possible penalty and to the unique and complex nature of the litigation.” See Harbison v. Bell, 556 U.S. 180, 190, 129 S.Ct. 1481, 173 L.Ed.2d 347 (2009).

. Alabama, Arizona, Arkansas, California, Colorado, Delaware, Florida, Georgia, Idaho, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, Washington, Wyoming, the United States Federal Government, and the United States Military.

. Ala.Code § 13A-5-54; A.R.S. Rules. Cfim. Proc., Rule 6.8; Ark. Admin. Code 160.00.2; Cal. Rules of Court, R. 4.117; Fla. R.Crim. P. 3.112; Ga. Sup.Ct. Unified Appeal Procedure, Rule II. A.; Id.Crim. R. 44.3; Ind. R.Crim. P. 24(B); Kan. Admin. Regs. § 105-3-2; La. Admin Code, tit. 22, pt. XV, § 915; Mont. Sup.Ct. Standards for Competency of Counsel for Indigent Persons in Death Penalty Cases, § I; Nev. Sup.Ct. R. 250.2; North Carolina Rules on the Commission of Indigent Defense Services, Pt. 2, App. 2A (Feb. 10, 2006); Rules of Superintendence for the Courts of Ohio, Sup. R. 20.01 (Mar. 1, 2010); Okla. Indigent Def. System Capital Trial Application, http://www.ok.gov./OIDS/index.html (last visited May 27, 2014); Oregon Public Defense Services Commission Qualification Standards for Court-Appointed Counsel to Represent Financially Eligible Persons at State Expense, Standard IV, Section 5 (Dec. 21, 2013); Pa. R.Crim. P. 801; S.C.App.Ct. R. 421, S.C.Code Ann. § 16-3-26; Tenn. Sup.Ct. Rules, R. 13; Tex.Crim. Proc.Code Ann. art. 26.052 (West); Utah R.Crim. P.8; 6 Va. Admin. Code § 30-10-10; Wash.Super. Ct. Spec. P. Rules — Criminal (Sprc), Rule 2; United States Federal Courts, Guidelines for the Administration of the Criminal Justice Act, vol. 7, pt. A, ch. 6, § 620.30.

.See Death Row Inmates by State, Death Penalty Information Center, http://www. deathpenalty-info.org/death-row-inmates-state-and-size-death-row-year (last visited May 27, 2014).

.A.R.S. Rules. Crim. Proc., Rule 6.8; Ark. Admin. Code 160.00.2; Cal. Rules of Court, R. 4.117; Fla. R.Crim. P. 3.112; Ga. Sup.Ct. Unified Appeal Procedure, Rule II.A; Id.Crim. R. 44.3; Ind. R.Crim. P. 24(B); La. Admin Code. tit. 22, pt. XV, § 915; Nev. Sup.Ct. R. 250.2; North Carolina Rules on the Commission of Indigent Defense Services, Pt. 2, App. 2A (Feb. 10, 2006); Rules of Superintendence for the Courts of Ohio, Sup. R. 20.01 (Mar. 1, 2010); Oregon Public Defense Services Commission Qualification Standards for Court-Appointed Counsel to Represent Financially Eligible Persons at State Expense, Standard IV, Section 5 (Dec. 21, 2013); Pa. R.Crim. P. 801; Tenn. Sup.Ct. Rules, R. 13; Tex.Crim. Proc.Code Ann. art. 26.052 (West); Utah R.Crim. P. 8; 6 Va. Admin. Code § 30-10-10; United States Federal Courts, Guide to Judiciary Policies and Procedures, vol. 7, pt. A, ch. 6, 620.30.

. See Air Force Instruction 51-103, Judge Advocate Professional Development, V 4 (3 September 2013).

. According to Captain DR’s post-trial declaration, his total capital defense training consisted of (a) attending a Naval JAG School training course titled "Defending Complex Cases," one day of which was devoted to defending capital cases; and (b) attending a three-day course sponsored by the National Association of Criminal Defense Lawyers (NACDL) entitled, "Making the Case for Life,” which focused on "jury selection, developing mitigation evidence, and working mitigation into the findings case.”

. See The U.S. Military Death Penalty, Death Penalty Information Center, http://www.death penaltyinfo.org/us-military-death-penalty#facts (last visited May 27, 2014) (since 1984 there have been 47 capital courts-martial resulting in 15 adjudged death sentences).

. See 18 U.S.C. §§ 3005, 3599; Administrative Office of the United States Courts, Guide to Judiciary Policies and Procedures, Vol. 7, Pt. A, Ch. 6, §§ 620.10.10, 620.30.