RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0079p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

OMAR RASHAD POUNCY,

                *Petitioner-Appellant,*

    *v.*

CARMEN DENISE PALMER, Warden,

                *Respondent-Appellee.*

No. 20-1960

─────────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:13-cv-14695—Matthew F. Leitman, District Judge.

Decided and Filed:  April 6, 2021

Before:  BOGGS, CLAY, and SUTTON, Circuit Judges.

─────────────────

**COUNSEL**

**ON BRIEF:**  David L. Moffitt, LAW OFFICES OF DAVID L. MOFFITT & ASSOCIATES, PLLC, Bingham Farms, Michigan, for Appellant.  John S. Pallas, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

─────────────────

**OPINION**

─────────────────

SUTTON, Circuit Judge.  Omar Pouncy requested release from state prison while the district court reviewed his habeas petition.  The district court denied the request.  Because Pouncy has not shown that the district court abused its discretion, we affirm.

In 2005, Michigan indicted Pouncy on a slew of offenses connected with a string of carjackings.  *Pouncy v. Palmer*, 846 F.3d 144, 147–48 (6th Cir. 2017).  At trial, Pouncy waived

his right to counsel, opting to represent himself instead. *Id.* at 153–54. A jury found him guilty of four counts of carjacking, four counts of armed robbery, and three firearm counts. *Id.* at 154. The state trial court sentenced Pouncy to between 586 and 824 months in prison. *Id.*

The Michigan Court of Appeals affirmed the conviction, rejecting Pouncy's argument that he had not waived his right to counsel in a knowing and voluntary manner. *Faretta v. California*, 422 U.S. 806, 807 (1975); *see People v. Williams*, 683 N.W.2d 597, 601–02 (Mich. 2004). Pouncy's additional challenges in state court also fell short. *See Pouncy*, 846 F.3d at 156.

In 2013, Pouncy, by then represented by counsel, filed a petition for a writ of habeas corpus in federal district court. In his petition, he argued (among other things) that the state courts erred when they allowed him to represent himself at trial. In 2016, the district court granted Pouncy a conditional writ, agreeing that he did not properly surrender his right to counsel before trial. Michigan appealed.

While the State's appeal proceeded, the district court released Pouncy on bond. *See* Fed. R. App. P. 23. We upheld its decision to do so. Among other conditions of release, Pouncy had to stay in his house, except for approved activities, and he had to avoid committing new crimes.

Pouncy violated his conditions of release. About a month after being let out, he tried to enter the chambers of the state judge who presided over his criminal trial, prompting a stern warning from the federal district court. Meanwhile, on August 4, 2016, we heard oral argument on the State's appeal, which Pouncy attended. But shortly thereafter, Michigan charged him with two new crimes: possessing a firearm as a felon and possessing ammunition as a felon. Warnings done, the district court revoked bail and sent Pouncy back to prison.

In 2017, we reversed the district court's grant of habeas. *Pouncy*, 846 F.3d at 163. Because the district court had addressed only the waiver-of-counsel issue, we remanded the case to allow the court to consider Pouncy's other habeas claims. *Id.*

While the district court considered Pouncy's arguments, things did not go well in prison. A guard discovered a cell phone hidden in Pouncy's prison cell. An intelligence analyst working

with the Michigan Department of Corrections inspected the phone as well as a phone discovered on another inmate. The analyst discovered messages between Pouncy and a witness. The messages suggested that Pouncy had paid $10,000 to secure false testimony at an evidentiary hearing in his federal habeas proceeding.

The government asked the district court to dismiss Pouncy's habeas petition in light of this evidence. The district court declined to dismiss the petition in full, reasoning that the compromised testimony did not bear on several of Pouncy's claims.

When the COVID-19 pandemic began, Pouncy asked the district court to release him on bond while it continued to review his petition. The court declined to do so. When the pandemic worsened, Pouncy asked for bail again. The district court denied his request again. That last denial prompted this appeal.

A prisoner seeking bail pending review of his habeas petition must, among other requirements, convince the district court that exceptional circumstances and the "interests of justice" warrant relief. *Dotson v. Clark*, 900 F.2d 77, 79 (6th Cir. 1990). It will be the rare occasion when an inmate will be able to satisfy this standard. *Id.* We review a bail ruling for abuse of discretion. *See United States v. Chilingirian*, 280 F.3d 704, 709 (6th Cir. 2002).

The district court reasonably concluded that the "interests of justice" did not support Pouncy's release. Haunting Pouncy's claim is this looming reality: He failed to comply with his conditions of release the last time he was out on bail. In particular, he attempted to intimidate the state trial judge who heard his case and, when that by itself did not land him back in jail, he committed two felonies. Ending bail on this record is not an abuse of discretion.

Trying to avoid this conclusion, Pouncy maintains that he should be freed given the length of time it has taken to resolve his petition—four years since we remanded the case and seven years in total. But most of this delay rests at Pouncy's feet. Michigan presented "substantial evidence that Pouncy had conspired with a witness to present false testimony." R.311 at 6. That discovery spawned time-consuming collateral litigation. Pouncy also has inundated the district court with filings unrelated to the merits of his petition, sometimes in

violation of court orders that prohibited the filing. Self-inflicted delays do not create a cognizable premise for bail.

Pouncy also maintains that, if he succeeds on one of his remaining habeas claims, Michigan will have to reinstate an earlier plea offer. *See Lafler v. Cooper*, 566 U.S. 156, 174 (2012); *Byrd v. Skipper*, 940 F.3d 248 (6th Cir. 2019). The terms of that offer, says Pouncy, would make him eligible for parole today, a benefit that will go to waste unless we release him promptly. But Pouncy did not raise this argument as a ground for bail in either of his motions before the district court. He instead argued that, if the district court denied bail, it should expedite a ruling on this merits claim. Pouncy later agreed, however, that the court should decide all of his claims together. The district court's order memorializing that agreement was hardly unreasonable and, what follows, hardly an abuse of discretion.

Pouncy insists that, no matter what else is true, the COVID-19 pandemic warrants release by itself. But he has not provided evidence that the virus poses a particular threat to him. The district court did not exceed its discretion in finding that the pandemic alone did not amount to an exceptional circumstance with respect to Pouncy.

Last and least, Pouncy refers to the district court's decision to release him pending appeal three years ago. Because we affirmed that ruling, he argues, that must mean he deserves release now. But both decisions came before Pouncy violated what the district court aptly called a "fundamental condition[] of release." R.307 at 7. They also came before we reversed the district court's grant of habeas relief, which flipped the presumption in favor of release that Pouncy enjoyed during Michigan's appeal, Fed. R. App. P. 23(c), to a presumption against release that Michigan enjoys while the district court considers Pouncy's petition, *see Dotson*, 900 F.2d at 79.

That leaves the question whether our judgment should come in the form of an affirmance or a dismissal for lack of jurisdiction. The government argues that we should dismiss Pouncy's appeal because he never obtained a "certificate of appealability." 28 U.S.C. § 2253(c)(1). We appreciate the point, but disagree with its application here. Section 2253(c)(1)(A) requires prisoners to obtain a certificate before appealing "the final order in a habeas corpus proceeding." In applying this requirement, the Supreme Court has explained that only orders that "dispose of

the merits of a habeas corpus proceeding" count as "the final order." *Harbison v. Bell*, 556 U.S. 180, 183 (2009). But denying bail does not dispose of the merits. *See Dotson*, 900 F.2d at 78–79. As in *Harbison*, which disclaimed the need to obtain a certificate of appealability to challenge an order refusing to enlarge the authority of appointed habeas counsel, 556 U.S. at 183, this appeal concerns a "collateral" question: whether the petitioner should be released while the district court considers the merits. *Dotson*, 900 F.2d at 78; *Illarramendi v. United States*, 906 F.3d 268, 269 (2d Cir. 2018) (per curiam). Since *Harbison*, to our knowledge, every circuit to take up this question has concluded that a certificate of appealability is not required to appeal a denial of bail. *Illarramendi*, 906 F.3d at 269; *United States v. Sharpe*, 834 F. App'x 823, 824 (4th Cir. 2021); *Watson v. Goodwin*, 709 F. App'x 311, 312 (5th Cir. 2018); *see also United States v. Taylor*, 194 F.3d 175 (D.C. Cir. 1999) (unpublished table decision).

*Harbison*'s key insight turns on context. Even though some "final decisions" in a habeas proceeding may be sufficiently complete to justify an appeal under § 1291, that does not mean they amount to the kind of "final order in a habeas corpus proceeding" that requires a certificate of appealability under § 2253(c)(1)(A). *See Harbison*, 556 U.S. at 183. Put another way, even though the federal courts may treat some habeas interlocutory orders as "final decisions" because they are "completely separate from the merits of the action," *Henry v. City of Detroit Manpower Dep't*, 763 F.2d 757, 760, 762 (6th Cir. 1985) (en banc); *see, e.g.*, *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949), that does not mean they "dispose of the merits of a habeas corpus proceeding," *Harbison*, 556 U.S. at 183; *see Bracey v. Superintendent Rockview SCI*, 986 F.3d 274, 282 (3d Cir. 2021) ("*Harbison* used 'the merits' to distinguish 'final orders' that conclude the habeas proceeding itself from those orders that merely resolve a collateral issue."); *United States v. Fulton*, 780 F.3d 683, 686–88 (5th Cir. 2015). Appeals from denied bail motions amount to collateral orders that do not require a certificate of appealability.

That has not always been the rule in our circuit. Under the prior version of § 2253 that predated the passage of AEDPA in 1996, we appreciate, habeas petitioners had to obtain a "certificate of probable cause" before appealing a denial of bail. *Lee v. Jabe*, 989 F.2d 869, 870–71 (6th Cir. 1993). And while AEDPA created many material changes to the handling of habeas petitions, we also appreciate, this is not one of them. As it happens, there is no material

difference between the certificate of appealability and certificate of probable cause requirements for today's purposes. Even so, *Harbison* makes clear that collateral appeals, separate from appeals over the merits of a habeas petition, do not require a certificate of appealability. *See Illarramendi*, 906 F.3d at 269–71.

We affirm.