RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0086P (6th Cir.)
File Name: 01a0086p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

96-6652
PHILIP R. WORKMAN,
   *Petitioner-Appellant,*

  v.

RICKY BELL, Warden,
   *Respondent-Appellee.*

00-5367
In re: PHILIP R. WORKMAN,
   *Movant.*

Nos. 96-6652;
00-5367

Decided and Filed: March 23, 2001

Before RYAN, SILER, and COLE, Circuit Judges.

_____

**OPINION**

_____

 SILER, Circuit Judge. This matter comes before the court on a motion to reopen and to appoint a special master made by petitioner, Philip R. Workman, pursuant to the All Writs Act, 28 U.S.C. § 1651, Fed. R. Civ. P. 53(c) and 60(b)(6), and the court's inherent power to protect the integrity of the

1

judicial process.  For reasons stated hereafter, we deny the motion.

Workman was convicted in Tennessee for the murder of a Memphis police officer during a robbery in 1981.  After unsuccessful direct appeals and state post-conviction proceedings, he petitioned the district court for a writ of habeas corpus under 28 U.S.C. § 2254.  The district court denied relief, and that was affirmed by this court in *Workman v. Bell*, 178 F.3d 759 (6th Cir. 1998), *cert. denied*, 528 U.S. 913 (1999).  A subsequent petition to file a second habeas corpus action was denied by a panel of this court and was also denied by an equally divided en banc court in *Workman v. Bell*, 227 F.3d 331 (6th Cir. 2000), *cert. denied*, ___ U.S. ___, 2001 WL 178265 (U.S. Feb. 26, 2001) (No. 00-7620).

After the latest denial of certiorari, the Tennessee Supreme Court set an execution date of March 30, 2001, and the petitioner then filed a motion to stay the execution date and the pending motion to reopen and appoint a special master.  This court subsequently denied the motion to stay the execution date.  He then filed a second motion to stay the execution date along with the motion to reopen and to appoint a special master.

Workman claims that the grounds for his pending motion are based upon a fraud upon the court.  Specifically, he claims that the State asserted in argument before this court that Workman still had the opportunity to request relief under executive clemency in Tennessee.  Although Workman was given a clemency hearing in April 2000, he withdrew the request before the governor acted upon it while his petition for rehearing en banc was proceeding.  Later, he had another clemency hearing before the Tennessee Board of Probation and Parole (TBPP) on January 25, 2001.  The governor of Tennessee has not yet decided his request for clemency, so far as this court is aware.  Workman seized upon language in an order that this court entered in 1999, denying the first petition for rehearing en banc, when we stated:

"The traditional remedy for claims of innocence based on new evidence, discovered too late in the day to file a new trial motion, has been executive clemency." *Herrera v. Collins,* 506 U.S. 390, 417 (1993).

Under Tennessee law, the governor may grant clemency, *see* Tenn. Code Ann. §40-27-101, so Workman may produce evidence to the governor that the fatal shot must have come from someone else's gun.

In support of his claim of fraud, Workman makes the following allegations: (1) the Tennessee Attorney General and others from his office, persons associated with the TBPP, representatives of the Shelby County District Attorney's Office and the governor's staff held meetings about the clemency proceedings that were designed to secure his execution; (2) the TBPP was hostile to the witnesses Workman presented during the clemency proceedings; (3) the State presented fabricated expert testimony during the clemency proceedings; and (4) a retired police officer, Clyde Keenan, falsely testified during the clemency proceedings.

In our equally divided opinion denying further relief for the petitioner in *Workman*, 227 F.3d 331, all of the judges agreed that the court can reconsider the petition if there was a fraud upon the court, as explained in *Demjanjuk v. Petrovsky*, 10 F.3d 338 (6th Cir. 1993). The elements of fraud set out in *Demjanjuk* are conduct:

(1) On the part of an officer of the court;
(2) That is directed to the "judicial machinery" itself;
(3) That is intentionally false, wilfully blind to the truth, or is in reckless disregard for the truth;
(4) That is a positive averment or is concealment when one is under a duty to disclose;
(5) That deceives the court.

*Id.* at 348.

Although the State asserted that a clemency proceeding was available in which Workman could present evidence, it did

not make a statement concerning the clemency proceeding that was intentionally false, wilfully blind to the truth, or in reckless disregard for the truth. Taking the allegations in the light most favorable to Workman, if there was any fraud, it would have been upon the governor of Tennessee or upon the TBPP.

Death row inmates have no constitutional right to clemency proceedings. *See Herrera,* 506 U.S. at 414. The Tennessee Governor has the power to pardon, grant reprieves and commutations in all criminal cases except impeachment. *See* Tenn. Const. art. III, § 6; Tenn. Code Ann. § 40-27-101. The TBPP makes, "upon the request of the governor, . . . nonbinding recommendations concerning all requests for pardons, reprieves or commutations." Tenn. Code Ann. § 40-28-104(a)(10).

We do not sit as super appeals courts over state commutation proceedings. In *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 276 (1998) (plurality opinion), the Court held, "We reaffirm our holding in *Dumschat* [452 U.S. 458 (1988)], that 'pardon and commutation decisions have not traditionally been the business of courts; as such, they are rarely, if ever, appropriate subjects for judicial review.'" However, the court split on the issue of whether clemency proceedings were subject to the constitutional safeguards of the Due Process Clause. *See id.* at 289. Justice O'Connor's concurring opinion concluded that "some *minimal* procedural safeguards apply to clemency proceedings" regardless of whether the power to grant clemency is solely entrusted to the executive. *Id.* (O'Connor, J., concurring). She illuminated the standard by stating, "Judicial intervention might, for example, be warranted in the face of a scheme whereby a state official flipped a coin to determine whether to grant clemency, or in a case where the State arbitrarily denied a prisoner any access to its clemency process." *Id.*

Workman does not allege that his Tennessee clemency proceedings failed to meet the standard set out in *Woodard*. He attacks the evidence presented at his clemency proceeding

by saying that it was erroneous or false. Thus, he attacks the proceedings' substantive merits. We are not authorized to review the substantive merits of a clemency proceeding. *See Duvall v. Keating*, 162 F.3d 1058, 1061 (10th Cir. 1998). Our only review is to see that there are some minimal procedural safeguards. *See Faulder v. Texas Board of Pardons and Paroles,* 178 F.3d 343, 344 (5th Cir. 1999). It is not our duty to determine the quality of the evidence considered by the governor or his board.

Because we deny the motion to reopen and to appoint a special master, the second motion to stay the execution is also meritless.

MOTIONS DENIED.