RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 11a0035p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

RALPH STEVENS BAZE, JR.,
                    *Petitioner-Appellant,*

                                                No. 10-5584

        *v.*

PHILIP PARKER,
                    *Respondent-Appellee.*

_____

Appeal from the United States District Court
for the Eastern District of Kentucky at Ashland.
No. 01-00031—Amul R. Thapar, District Judge.

Decided and Filed:  February 4, 2011

Before:  BOGGS, COLE, and COOK, Circuit Judges.

_____

### COUNSEL

**ON BRIEF:**   David M. Barron, KENTUCKY DEPARTMENT OF PUBLIC ADVOCACY, Frankfort, Kentucky, Dennis J. Burke, KENTUCKY DEPARTMENT OF PUBLIC ADVOCACY, LaGrange, Kentucky, for Appellant.  William Robert Long, Jr., OFFICE OF THE KENTUCKY ATTORNEY GENERAL, Frankfort, Kentucky, for Appellee.

        BOGGS, J., delivered the opinion of the court, in which COOK, J., joined. COLE, J. (pp. 12–13), delivered a separate opinion concurring in the judgment.

_____

### OPINION

_____

        BOGGS, Circuit Judge.  Ralph Stevens Baze, Jr., a Kentucky inmate on death row, wishes to interview prison personnel to support his application for clemency.  After the Kentucky Department of Corrections ("KDOC") denied Baze's request for unfettered access to these personnel, Baze sought relief in district court with a motion to order

1

KDOC to allow him to conduct his desired interviews.  The district court denied Baze's motion for a want of jurisdiction, and we affirm.

I

In February 1994, a Kentucky jury sentenced Baze to death for the 1992 murders of Sheriff Steven Bennett and Deputy Sheriff Arthur Briscoe.  Direct review concluded in 1998, and this court upheld the denial of Baze's petition for a writ of habeas corpus in 2004.  *Baze v. Parker*, 371 F.3d 310, 315 (6th Cir. 2004), *cert. denied*, 544 U.S. 931 (2005).

After exhausting habeas proceedings, Baze began work on a clemency application.[1]  Appellant's Br., at 2.  Baze believes that certain individuals at the prison where he is confined possess information that could strengthen his bid for clemency.  Accordingly, on January 20, 2009, he requested permission for his attorneys to speak with prison guards, the death row unit administrator, and other death row inmates.  *Id.* at 3.  Two days later, the Commissioner of KDOC denied Baze's request.

On February 10, 2009, Baze filed a complaint in state court.  Baze sought a declaratory judgment, claiming that KDOC's denial violated his constitutional rights.  The court denied his claim, and the Kentucky Supreme Court affirmed on January 21, 2010.  *Baze v. Thompson*, 302 S.W.3d 57, 58, 60 (Ky. 2010).

On February 24, 2010, Baze filed a motion in district court, in which he requested an order that KDOC allow him to conduct his desired interviews without interference.  Baze argued that the order was authorized by 18 U.S.C. § 3599(f) and, in the alternative, the All Writs Act, 28 U.S.C. § 1651.

On May 6, 2010, the district court denied Baze's motion.  The district court held that it lacked jurisdiction to issue the requested order because "[s]ection 3599(f) merely allows the Court to authorize the expenditure of funds . . . [and] does not give the Court

---

[1]Baze is currently at work on his second clemency application.  Baze first sought clemency in 2007.  Appellant's Br., at 5 n.2.

the authority to issue an order granting a defendant access to certain state officials or others in the hopes that they will provide information relevant to the clemency process." The court further held that the All Writs Act is not a source of jurisdiction to issue the order because "the Court has no independent jurisdiction over the state clemency process beyond the appointment of counsel under Section 3599(e) . . . [and] because Section 3599 is not an independent source of jurisdiction, Baze's requested relief is not available under the All-Writs Act."

Baze filed this timely appeal, and this court has jurisdiction to review the final decision of the district court.  28 U.S.C. § 1291; *see Harbison v. Bell*, 129 S. Ct. 1481, 1485 (2009) ("An order that merely denies a motion to enlarge the authority of appointed counsel . . . is not [an order that disposes of the merits of a habeas proceeding] and is therefore not subject to the [certificate of appealability] requirement.").

II

The sole issue presented for review is whether Congress has empowered district courts to grant a request like Baze's and to order state officials not to interfere with the gathering of information in support of clemency.[2]  This court reviews such questions of subject-matter jurisdiction and statutory interpretation de novo. *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007) (en banc) ("When a decision on subject-matter jurisdiction concerns pure questions of law . . . , this court conducts a de novo review.") (citation and italics omitted); *United States v. Parrett*, 530 F.3d 422, 429 (6th Cir. 2008) ("We review questions of statutory interpretation de novo.").

In determining the scope of a district court's jurisdiction, our starting point is that the lower federal courts are courts of limited jurisdiction and possess only those powers granted to them by Congress. *Finley v. United States*, 490 U.S. 545, 550 (1989) (quoting *Aldinger v. Howard*, 427 U.S. 1, 15 (1976) (noting that "federal courts . . . are courts of limited jurisdiction marked out by Congress")).  With that principle in mind, federal

_____

[2]Appellee argues that, because Baze was not using federally-funded counsel, he can not avail himself of any provision of the statute that provides for such counsel. Appellee's Br., at 8–13. The district court did not decide this issue and we decline to do so here.

courts must be reluctant to infer that Congress has expanded their jurisdiction. *Welch v. Texas Dept. of Highways and Pub. Transp.*, 483 U.S. 468, 474 (1987) (citing *Am. Fire & Casualty Co. v. Finn*, 341 U.S. 6, 17 (1951) ("The jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation.")).

A federal court's reluctance to infer jurisdiction is enhanced where an expansion of jurisdiction would implicate federalism concerns. *United States v. Bass*, 404 U.S. 336, 349 (1971) ("[U]nless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance."); *see Solid Waste Agency of Northern Cook Cnty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 174 (2001) (interpreting a statute to "avoid constitutional and federalism questions" where there was no "clear statement from Congress" to the contrary). Federalism concerns are particularly strong in criminal matters, and, absent a clear directive from Congress or the Constitution, a federal court should be loath to assume jurisdiction to interfere with state criminal proceedings, including postconviction proceedings. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003) ("A basic principal of federalism is that each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders, and each State alone can determine what measure of punishment . . . to impose . . . ."); *Younger v. Harris*, 401 U.S. 37, 43-44 (1971) (noting a "longstanding public policy against federal court interference" with state criminal proceedings); *Coleman v. Thompson*, 501 U.S. 722, 726 (1991) ("This is a case about federalism. It concerns the respect that federal courts owe the States and the States' procedural rules when reviewing the claims of state prisoners in federal habeas corpus.").

## III

Here, Baze requests that the district court order state prison officials to provide him with information that he can use in a state clemency proceeding. Baze argues there are two independent sources for this authority: 18 U.S.C. § 3599 and, alternatively, the All Writs Act, 28 U.S.C. § 1651. We consider each of these potential sources of jurisdiction in turn.

A

"Section 3599, titled 'Counsel for financially unable defendants,' provides for the appointment of counsel for . . . federal capital defendants . . . [and] state and federal postconviction litigants." *Harbison*, 129 S. Ct. at 1485–86; *see* 18 U.S.C. § 3599. The Supreme Court recently held that such "state and federal postconviction litigants" include inmates involved in state clemency proceedings. *Harbison*, 129 S. Ct. at 1491. There is no question, then, that subject to any statutory requirements, the district court is authorized to appoint counsel to assist Baze in preparing his state clemency application, and that any such counsel is entitled to compensation pursuant to section 3599.

Baze, however, argues that section 3599 provides him with much more than that. Baze points to section 3599(f), which provides, in part:

> Upon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or the sentence, the court may authorize the defendant's attorneys to obtain such services on behalf of the defendant and, if so authorized, shall order the payment of fees and expenses therefor . . . .

Baze argues that, because this provision empowers a federal court to "authorize the defendant's attorneys to obtain" investigative services, then it must also empower the court to order third-party compliance with the attorneys' investigations. Baze effectively interprets the statute to empower federal courts, not only to fund an attorney's efforts to obtain investigative services that the court finds to be reasonably necessary, but also to manage and enforce the collection of evidence in state clemency proceedings.[3] Such a broad oversight power is in tension with the longstanding principle that "we do not sit as super appeals courts over state commutation proceedings." *Workman v. Bell*, 245 F.3d 849, 852 (6th Cir. 2001) (citing *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272,

---

[3]Section 3599 applies to other proceedings as well, such as federal capital trials and federal habeas proceedings. *Harbison*, 129 S. Ct. at 1485–86. Although federal courts in such cases may have oversight powers similar to those Baze seeks here, those powers are exercised pursuant to other sources of authority, not section 3599. *See* 28 U.S.C. § 2254(e)(2) (conditions for conducting an evidentiary hearing in a habeas proceeding).

276 (1998) (plurality opinion) ("We reaffirm . . . that pardon and commutation decisions have not traditionally been the business of courts; as such, they are rarely, if ever, appropriate subjects for judicial review.") (internal citation and quotation marks omitted)).  Baze raises three arguments in favor of his interpretation, and we reject all three.

First, Baze argues that "the plain language of § 3599(f) provides jurisdiction and authority to prevent . . . interference" with an attorney's efforts to obtain investigative services.  Appellant's Br., at 13.  This argument hinges on the meaning of the provision, "the court may authorize the defendant's attorneys to obtain such services on behalf of the defendant."  Baze interprets this provision to give federal courts jurisdiction over the acquisition of investigative services.  *Id.* at 14.  Thus, Baze argues, "[w]here a government official interferes or prohibits [the acquisition of investigative services], the plain language of § 3599(f) authorizes a federal court to issue orders necessary to order the acquisition of those services."  *Ibid.*

We disagree with Baze's textual interpretation.  The relevant provision simply empowers a court to authorize, for purposes of compensation, an attorney to acquire an investigator's efforts—not his total success.  Therefore, it does not, as Baze argues, enable a court to order any party that stands in the investigator's way to stand down.  To permit someone to seek information is not the same as establishing a substantive right for that person to acquire that information over all possible obstacles.  Further, the provision at issue does not stand alone, but is rather part of the statute as a whole.  *Bob Jones Univ. v. United States*, 461 U.S. 574, 586 (1983) ("[I]t is well settled that, in interpreting a statute, the court will not look merely to a particular clause in which general words may be used, *but will take in connection with it the whole statute . . . .*") (quoting *Brown v. Duchesne*, 19 How. 183, 194 (1857)).  Section 3599 provides for federally-funded counsel for certain defendants.  In this context, section 3599(f) provides for funds to cover the counsel's costs of investigative services that the federal court determines to be "reasonably necessary."  Consistent with this purpose, the provision empowers the district court to guard the federal purse strings by authorizing—for

purposes of federal reimbursement—an attorney to obtain only those investigative services that the court approves. *See Fautenberry v. Mitchell*, 572 F.3d 267, 268–69 (6th Cir. 2009) (affirming a district court's denial of inmate's § 3599(f) request for *funds* to obtain an expert opinion because the requested service was not "reasonably necessary"). The provision provides for nothing beyond this funding power, and Baze's interpretation is therefore belied by the plain meaning of the statute.

Second, Baze points to *Harbison* as support for the proposition that "federal courts have the authority to enter orders that ensure the appointment of meaningful counsel and experts in state clemency proceedings." Appellant's Br., at 15. *Harbison* does not support this proposition. *Harbison* holds that section 3599 provides for federally-funded counsel to represent defendants in state clemency proceedings. 129 S. Ct. at 1491. As the Supreme Court noted, section 3599 thereby effectuated Congress's intent that "no prisoner would be put to death without meaningful access to the 'fail-safe' of our justice system." *Ibid*. (quoting *Herrera v. Collins*, 506 U.S. 390, 415 (1993)). Baze appears to argue that "meaningful access" to the clemency process necessarily includes a right to call upon federal courts to take action to supervise the mechanics of a state clemency proceeding. Appellant's Br., at 15. But the "meaningful access" to the clemency process that the Supreme Court refers to in *Harbison* is access to federally-funded counsel, not federal oversight of the discovery process in a state proceeding. *Ibid*. And, without any clear textual underpinnings, we can not infer an Congressional intent to interfere with state proceedings to such a remarkable extent. *Harkless v. Brunner*, 545 F.3d 445, 454 n. 5 (2008) ("Because states retain their sovereignty under the Tenth Amendment, Congress in enacting legislation affecting the balance in our federal system between the national and state governments must by plain statement make clear that it has duly deliberated the issue and fully intended to reach that result.") (quoting *In re Brentwood Outpatient, Ltd.*, 43 F.3d 256, 264 (6th Cir. 1994)); *cf. Harbison*, 129 S. Ct. at 1490 n.9 (noting that states are indifferent to whether an inmate's clemency counsel is federally funded and that section 3599's provision of such funds therefore raises no federalism concerns). Clearly, neither *Harbison* nor the

Congressional intent to which it refers can support the remarkable federal power that Baze seeks to create here.

Third, Baze argues that his interpretation avoids the "absurd result" of allowing courts to authorize certain investigative services, yet leaving them powerless to stop state "interference" with the efforts of the investigator. But section 3599(f) allows an attorney to hire an investigator; it does not ensure that the investigator will succeed. Thus, by denying an investigator's access to prison guards, the state no more "interferes" with the liberty of the investigator than does a keeper of sealed records or a citizen who refuses to speak. Section 3599, which authorizes a court to fund the investigator's *efforts*, does not allow for any judicial oversight to ensure the investigator's *success*. Section 3599 allows a federal court to approve the expenditures of federal funds, not usurp oversight of the discovery process in a state proceeding. In line with that limited power, the only determination that the federal court may make under 3599(f) is whether the investigative services are "reasonably necessary." That determination—that the services are important enough to merit compensation—has no conflict with the sort of outside interference that Baze complains of here. Interference with the efforts of the defendant's investigator does not undermine the district court's determination that the defendant's attorney should be compensated for his related efforts. Accordingly, there is no "absurd result" here. Although state interference with a defendant's efforts to obtain evidence in support of a state clemency application could be a problem, a solution is more appropriately fashioned in state court and, in any case, is nowhere to be found in 18 U.S.C. § 3599.[4]

Significantly, by its plain language, section 3599 applies only to indigent defendants, and Baze's interpretation therefore relies on a Congressional intent to provide federal oversight over state clemency proceedings to only a certain class of death row inmates. *See* 18 U.S.C. § 3599 ("Counsel for financially unable defendants"). We think it implausible that Congress enacted section 3599, not to level the playing field

---

[4]Notably, Baze previously requested an identical order in Kentucky court. *Baze*, 302 S.W.3d at 60.

by providing indigent death row inmates with the same access to clemency attorneys available to paying inmates, but to tip the balance in the other direction by providing indigent death row inmates with enforceable rights not available to other death row inmates. Baze, apparently recognizing this problem, argues that section 3599 should be interpreted to provide the federal oversight powers he seeks to all classes of defendants, as otherwise, "federal courts would have absolutely no jurisdiction with regard to clemency matters if a death row inmate was represented" by attorneys funded through other means. Appellant's Br., at 19–21. However, Baze's suggested interpretation can not be squared with the text of the statute, which limits its application to "a defendant who is or becomes financially unable to obtain adequate representation . . . ." 18 U.S.C. § 3599(a)(1). Further, because we hold that section 3599 does not authorize any defendant to secure federal oversight of a state clemency proceeding, it creates no comparative disadvantage for attorneys funded by other means.

To support his interpretation of the statute, Baze points to the recent decision by a magistrate judge in *Nields v. Bradshaw*, 2010 WL 148076, at *1 (S.D. Ohio Jan. 11, 2010). Interpreting section 3599 in the way Baze urges here, the magistrate judge ordered a prison to transport the prisoner, Nields, to a hospital for a brain scan. *Ibid.* ("[T]he Court finds it has jurisdiction, given by Congress under 18 U.S.C. § 3599, to issue the requested order and power to do so under the All Writs Act, 28 U.S.C. § 1651."). The magistrate judge explained his reasoning in one sentence. *Ibid.* ("The power to appoint counsel for clemency proceedings and provide for expert services to those counsel could be completely frustrated if the Court could not order reasonable ancillary relief to make those provisions meaningful."). Four days later, the magistrate stayed the order pending the state's appeal. *Nields v. Bradshaw*, 2010 WL 290963 (S.D. Ohio Jan. 15, 2010) ("The question of whether this Court has jurisdiction to enter the Order . . . is a close question of first impression. Staying the Order pending appeal will enable the Warden to obtain a decision by an Article III judge on that question."). Rather than appeal the issue, however, the state entered into an agreement with Nields, in which the state agreed to transport Nields for the brain scan and Nields agreed to

withdraw his motion.  Both parties complied, and the issue was never presented to this court.  *See* Docket No. 1:03-cv-00019.

Because the *Nields* decision was not considered by a panel of the Sixth Circuit, it does not bind this court.  Neither is *Nields* persuasive, as it appears to presume—and we hold to the contrary—that 3599(f) provides an attorney with a right to obtain a particular piece of information, as opposed to funding for an investigator to seek information.  Accordingly, we hold that *Nields* was wrongly decided and that the district court in this case correctly concluded that 3599(f) provides a federal court with no jurisdiction to issue any order beyond the authorization of funds.

B

In the alternative, Baze argues that the All Writs Act, 28 U.S.C. § 1651, empowers the district court to order KDOC to allow him to interview prison personnel and inmates.  The All Writs Act provides, in relevant part, that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651. Notably, the statute does not provide federal courts with an independent source of jurisdiction to issue writs, but only with the authority to issue writs "in aid of their respective jurisdictions." *Ibid.*; *United States v. Perry*, 360 F.3d 519, 533 (6th Cir. 2004) ("The All Writs Act enables federal courts to issue such commands 'as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.'") (quoting *United States v. N.Y. Tel.*, 434 U.S. 159, 172 (1977)).  Baze argues that, "because the district court was empowered under 18 U.S.C. § 3599 to authorize counsel to obtain services, the All Writs Act authorizes orders necessary to prevent government officials from interfering with those services."  Appellant's Br., at 24.  Baze's All Writs Act argument, then, is no different than his "absurd result" argument, considered above.  At bottom, Baze maintains that if the district court lacked jurisdiction to issue the requested order, then its power to authorize attorneys to obtain services would be frustrated.  To avoid this problem, Baze argues that section 3599 should be interpreted to allow for this enforcement power or,

in the alternative, the All Writs Act provides for the same power. Because section 3599 speaks only to funding, Baze's All Writs Act argument meets the same fate as his section-3599 argument.

Baze argues at length in his brief that, pursuant to *Harbison*, a federal court's jurisdiction to appoint and fund counsel does not conclude with the habeas proceedings, but rather continues through state clemency proceedings. *Id*. at 28–30; *Harbison*, 129 S. Ct. at 1491. But jurisdiction to appoint and fund counsel for a state clemency proceeding is not, as Baze would have it, bundled with jurisdiction to oversee the state clemency proceeding itself. Congress chose to provide federal courts with the power to authorize the release of federal funds to cover the costs of "reasonably necessary" investigative services to support an inmate's bid for clemency. There is nothing illogical about providing courts with that power but not providing them with the power to ensure that the investigator so funded will, in fact, obtain the desired information. Simply put, the power to authorize reimbursement is distinct from the power to ensure acquisition of information against all outside obstacles. Congress, in enacting section 3599, provided federal courts with one power but not the other, and it is not our place to upset that choice, be it through the All Writs Act or any other means. Because the only jurisdictional power granted to the district court by section 3599 is the power to appoint attorneys and oversee the release of federal funds to those attorneys, the relief that Baze seeks here is not "in aid of" the district court's preexisting jurisdiction under section 3599 and is thus outside the scope of the All Writs Act.

IV

For the foregoing reasons, we AFFIRM the decision of the district court.

---

**CONCURRING IN THE JUDGMENT**

---

COLE, Circuit Judge, concurring in the judgment. While I concur in the majority opinion's result, I do not concur in the majority opinion's reasoning because I believe it speaks more broadly than the circumstances of this case or the statutory language at issue allow.

Baze seeks to invoke our jurisdiction under either 18 U.S.C. § 3599(f) or the All Writs Act, 28 U.S.C. § 1651. I agree that these two statutes do not give us jurisdiction to grant Baze his desired relief: requiring a state prison to provide access to, and the cooperation of, state prison officials for Baze's clemency proceedings.

I part with the majority, however, as to their suggestion that § 3599(f) could never be invoked for a non-pecuniary request. After all, the text of that section explicitly separates the authorization and ordering ("the court may authorize the defendant's attorney to obtain such services") from the payment ("and, if so authorized, shall order the payment of fees and expenses therefor"), and basic principles of statutory interpretation require us to give meaning to the full text of a statute, *see, e.g.*, *United States v. Hill*, 79 F.3d 1477, 1482-83 (6th Cir. 1996). Parsing this language, the majority seems to interpret "authorize" to mean "permit." But even such an interpretation—against the backdrop of "a finding that . . . services are reasonably necessary for the representation of the defendant," § 3599(f)—suggests that some types of state interference would frustrate court orders issued under that section: for example, state action that prevents the § 3599-appointed attorney from meeting with the defendant or otherwise consulting with the defendant about services the court found to be "reasonably necessary."

To be sure, § 3599(f) does not ensure the "*total* success" (emphasis added) of an investigator, or "establish[] a *substantive right* for that person to acquire that information over *all* possible obstacles" (emphasis added), as the majority notes. Yet nothing in § 3599(f) prohibits a federal court from finding, in circumstances such as the examples

described above, that state action frustrated the "services" a federal court authorized counsel to obtain.  I believe we would have jurisdiction under § 3599(f) to address that case when it arises, and to remedy any such interference.