# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 2, 2022

Lyle W. Cayce
Clerk

No. 22-70010

Tracy Lane Beatty,

*Petitioner—Appellant*,

*versus*

Bobby Lumpkin, *Director, Texas Department of Criminal Justice, Correctional Institutions Division*,

*Respondent—Appellee*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:09-CV-225

Before Richman, *Chief Judge*, and Elrod and Haynes, *Circuit Judges*.
Per Curiam:

Tracy Beatty is scheduled for execution on November 9, 2022. Beatty was convicted and sentenced to death in 2004 for the capital murder of his mother, Carolyn Click. This case has a long history of habeas litigation. Further details of Beatty's murder conviction and subsequent post-conviction litigation need not be repeated here to resolve the issues raised on appeal, and they can be found in the prior proceedings. *See Beatty v. Director, TDCJ-CID*, No. 4:09-CV-225, 2013 WL 3763104, at *1 (E.D. Tex. July 16,

No. 22-70010

2013) (providing procedural history in denial of petition for writ of habeas corpus).

In early September of 2022, when there was no pending litigation, Beatty moved the district court under 18 U.S.C. § 3599(e) to compel the Texas Department of Criminal Justice to unshackle his hands during expert evaluations that his counsel had scheduled for later in September. The district court dismissed the motion for lack of jurisdiction. Beatty appealed and filed a concurrent motion to stay his execution. We AFFIRM the judgment of the district court and DENY as moot Beatty's motion for stay.

## I.

"We review questions of subject matter jurisdiction *de novo*." *Davis v. Fort Bend County*, 893 F.3d 300, 303 (5th Cir. 2018). And whether 18 U.S.C. § 3599 grants district courts jurisdiction to compel state officials to act is a question of subject-matter jurisdiction. *See Ayestas v. Davis*, 138 S. Ct. 1080, 1088–92 (2018) (holding that section 3599 grants courts judicial, not administrative, power); *cf. Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992) (explaining that the extent of the federal judicial power is a jurisdictional question). We have jurisdiction over this appeal under 28 U.S.C. § 1291.

## II.

"Section 3599(a) authorizes federal courts to provide funding to a party who is facing the prospect of a death sentence and is 'financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services.'" *Ayestas*, 138 S. Ct. at 1092 (quoting 18 U.S.C. § 3599(a)(1)). Appellant argues that sections 3599(e) and 3599(f) provide not only funding authorization but also a grant of jurisdiction for federal courts to oversee the implementation of "reasonably necessary" services by ordering state officials to comply with prisoners' requests related to such services.

2

No. 22-70010

Appellant is mistaken. Section 3599 does not allow a district court to provide the relief Appellant seeks because it is a funding law, not a law that grants federal courts authority to oversee the scope and nature of federally funded legal representation.

### A.

The text of sections 3599(e) and 3599(f) is clear. "Section 3599, titled 'Counsel for financially unable defendants,'[1] provides for the appointment of counsel for two classes of indigents . . . ." *Harbison v. Bell*, 556 U.S. 180, 184 (2009). Appellant in this case falls into the second class: those who are or become indigent "after the entry of a judgment imposing a sentence of death but before the execution of that judgment." 18 U.S.C. § 3599(a)(1)(B). Appointed counsel for such an indigent shall, until replaced, represent the prisoner throughout "all available post-conviction process." *Id.* § 3599(e). After it provides for appointing counsel, the statute authorizes funding for the representation and any reasonably necessary services that go along with it. *Ayestas*, 138 S. Ct. at 1092. The statute's granting of funding has earned it the description of being the "federal public defender statute." *Rhines v. Young*, 140 S. Ct. 8, 8 (2019) (mem.) (Sotomayor, J., respecting the denial of *certiorari*).

Appellant's argument that the scope of the statute goes further than merely allowing for the appointment and payment of counsel hangs on his reading of section 3599(f). Because this is a matter of statutory

---

[1] As the Court noted in *Harbison v. Bell*, 556 U.S. 180 (2009), section 3599 "uses the term 'defendant' to describe postconviction litigants." *Id.* at 185 n.2. The terms "defendant" and "prisoner" will thus be used interchangeably to describe Beatty in this opinion.

interpretation, and because the relevant text is not lengthy, it is worthwhile to reproduce the exact language below:

> (f) Upon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or the sentence, the court may authorize the defendant's attorneys to obtain such services on behalf of the defendant and, if so authorized, shall order the payment of fees and expenses therefor under subsection (g). . . .

18 U.S.C. § 3599(f).

From this text, Appellant argues that "Congress has therefore explicitly conferred jurisdiction on federal courts to 'authorize' counsel to 'obtain'—not just receive funding for—expert services." So far, Appellant is correct. The statute not only allows counsel to receive money allocated to expert services; it also allows counsel to spend that money on hiring experts. That is, it allows counsel to procure or purchase such services on behalf of the defendant. 18 U.S.C. § 3599(f); *see also Obtain*, *Black's Law Dictionary* (11th ed. 2019) ("to procure").

Where Appellant goes too far is reading the word "obtain" as authorizing courts to take any and every step that a prisoner may request related to the provision of expert services. Appellant argues that "in light of Respondent's recently created rule [regarding shackling prisoners' hands], obtaining the services required a court order directing the Respondent to refrain from impeding the delivery of routine expert services." This purportedly follows from the fact that if section 3599 authorizes a court "to do no more than cut checks," then state officials could be incentivized to obstruct access to the services that are being paid for.

This way of reading the law strays from the statute's text and into purported policy justifications for the law's existence. That is, this is really

an argument about how Appellant thinks the law's enforcement ought to be structured, not an argument about the ordinary, semantic content of the law's words. Appellant's argument seems to be that when statutes authorize funding, they should also confer jurisdiction or provide a cause of action to determine the scope of all activities that are funded by the statute.

However, we may not use policy in such a way to rewrite Congress's laws. As is the case for statutory interpretation in general, and for this law in particular, our court "is not tasked with interpreting § 3599 in a way that it believes is consistent with the policy outcome intended by Congress." *Harbiso*, 556 U.S. at 198 (Thomas, J., concurring in the judgment). After all, "Congress's intent is found in the words it has chosen to use." *Id.*; *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 347 ("[W]e are bound to operate within the framework of the words chosen by Congress and not to question the wisdom of the latter in the process of construction.").

Congress, as the policymaker in our constitutional order, has chosen to write laws that specifically grant causes of action that provide a federal court with jurisdiction to issue a remedy. *See, e.g.*, 42 U.S.C. § 1983. The explicit language that Congress used in section 1983 is nowhere to be found in section 3599. *Compare id.* ("Every person who . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."), *with* 18 U.S.C. § 3599 ("[T]he court may authorize the defendant's attorneys to obtain such services on behalf of the defendant and, if so authorized, shall order the payment of fees and expenses therefor . . . .").

Ruling out policy-based arguments, then, we must turn to whether the plain language of the statute empowers a federal court to compel state

officials to disregard their prison-visitation procedures in connection with the federal court's funding of expert services. It does not.

The ordinary use of the phrase "obtain counsel" or "obtain expert assistance" is to *hire* the relevant kind of professional. Phrases denoting this meaning appear frequently. For example, in *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court wrote that if an indigent detainee being interrogated is not informed of his right to *appointed* counsel, then the right to counsel "would often be understood as meaning only that he can consult with a lawyer if he has one or has the funds to obtain one." *Id.* at 473. Were "obtain" to mean "receive all the benefits associated with hiring," then the Supreme Court's distinction between consultation and obtainment would not make sense. Neither would the following sentence from a detained person: "I have obtained counsel, and now I would like to meet with her."

The same is true here. Section 3599 authorizes counsel to obtain experts that are reasonably necessary for post-conviction representation. In other words, the statute says that if counsel for an indigent prisoner can find a reasonably necessary expert, counsel has permission to be compensated for hiring that expert. The statute does not create an *independent* enforcement mechanism for an aggrieved, indigent prisoner to seek a remedy from a federal court about the scope of the expert services provided to the prisoner with federal funds. If a state official violates a prisoner's right to counsel, and that prisoner's counsel is being paid for by the federal government instead of the prisoner himself, then that prisoner must avail himself of the same recourse as a prisoner who is paying for his own counsel.

## B.

Although we have not had occasion to opine on the application of section 3599 to a case like this, several of our sister circuits have. They are in uniform agreement that section 3599's authorization for funding does not

imply an additional grant of jurisdiction to directly oversee the provision of counsel and related services. *See Baze v. Parker*, 632 F.3d 338, 345 (6th Cir. 2011); *Leavitt v. Arave*, 682 F.3d 1138, 1141 (9th Cir. 2012); *see also Rhines v. Young*, 941 F.3d 894, 895 (8th Cir. 2019) (addressing in dicta).

Of the three cases just cited, *Baze v. Parker*, 632 F.3d 338 (6th Cir. 2011), provides the most detailed and persuasive analysis of the issues. In that case, a convicted murderer who was sentenced to death exhausted habeas proceedings and intended to gather information for use in a clemency application. *Id.* at 340. He requested permission for his attorneys to speak with various prison employees and inmates. His request was denied. He sued, claiming a violation of his constitutional rights. That lawsuit went all the way to the Kentucky Supreme Court, which affirmed a denial of his claim. *Id.* After those proceedings, he moved in federal court for an order allowing him to conduct his desired interviews, claiming that section 3599 provided jurisdiction for such a motion. *Id.* The district court dismissed the motion for want of jurisdiction. The Sixth Circuit affirmed. *Id.*

The Sixth Circuit rejected, as we do now, the prisoner's arguments that the language of section 3599 extends beyond merely allowing district courts to determine what services are "reasonably necessary" and then to provide funds for those services. *Id.* at 342 ("Such a broad oversight power is in tension with the longstanding principle that 'we do not sit as super appeals courts over state commutation proceedings.'" (citation omitted)).

In addition, the Sixth Circuit explained that to read the statute as creating enforcement rights would lead to the "implausible" result that:

> Congress enacted section 3599, not to level the playing field by providing indigent death row inmates with the same access to clemency attorneys available to paying inmates, but to tip the balance in the other direction by providing indigent death row

inmates with enforceable rights not available to other death row inmates.

*Id.* at 344.

To note this strange imbalance is not to engage in policy analysis of our own. It merely reveals that Appellant's arguments about the lack of an internal enforcement mechanism making section 3599 a nullity are misplaced, for section 3599 puts indigent prisoners on the same footing as prisoners who pay for counsel. Whether the legislative creation of that footing is a wise use of institutional resources is not for us to determine.

The Ninth Circuit denied a similar motion made under section 3599 by a prisoner seeking to obtain forensic testing blood samples so that he could use them in support of his state clemency petition. *Leavitt*, 682 F.3d at 1141 ("But, section 3599(f) provides for 'nothing beyond . . . funding power' and doesn't 'empower the court to order third-party compliance' with Leavitt's attorneys' investigations." (quoting *Baze*, 632 F.3d at 342–43)).

The Eighth Circuit resolved a case with nearly identical facts to the instant case, but it did so on other grounds. *Rhines v. Young*, 941 F.3d 894, 895 (8th Cir. 2019). That case involved a murderer sentenced to death who exhausted all direct appeals and federal post-conviction proceedings who sought to meet with mental-health professionals to prepare a state clemency application. *Id.* The district court held it had no authority to order South Dakota prison officials to allow the inmate to meet with the experts. "Following oral argument, a majority of the panel tentatively concluded that [it] should affirm the district court." *Id.* However, the court dismissed the appeal on either mootness or exhaustion grounds instead of ruling on the issue. *Id.* While not as persuasive as either preceding opinion, it reveals at least that none of our sister circuits that have considered the issue have decided that section 3599 provides federal courts with anything beyond the

power to authorize funding for counsel and reasonably necessary expert services.

\*    \*    \*

The docket on which Appellant entered his motion to compel was associated with a federal habeas petition that was dismissed with prejudice in July of 2013.  And that denial of post-conviction relief came nearly a decade after Appellant's murder conviction, which occurred in 2004.  Now, eighteen years later, Appellant makes the bare allegation that receiving psychological services—specifically while unshackled—would assist with a clemency application or other litigation.

Intentional delay tactics near execution dates are commonplace enough that our court has a rule specifically addressing the timing of challenges to death sentences and/or execution procedures.  *See* 5th Cir. R. 8.10 ("Counsel who seek a certificate of appealability, permission to file a successive petition, or an appeal from a district court judgment less than 7 days before the scheduled execution must attach to the proposed filing a detailed explanation stating under oath the reason for the delay.").  Because Appellant has provided no legitimate justification as to why this appeal is anything but a delay tactic, the district court would not have abused its discretion in denying relief even if section 3599 could grant jurisdiction to make that decision.

\*    \*    \*

In sum, the district court correctly ruled that it did not have jurisdiction over Appellant's motion to compel. We AFFIRM. Appellant's motion to stay is therefore DENIED as moot.

No. 22-70010

Priscilla Richman, *Chief Judge*, concurring in the judgment:

Beatty was convicted of capital murder in a Texas state court and received a sentence of death. His post-conviction appeal and state and federal habeas applications have been unsuccessful, and he is scheduled to be executed on November 9, 2022. He has retained experts to evaluate his mental health.

Beginning in 2021, the Texas Department of Criminal Justice started allowing an inmate to be unshackled during an expert evaluation only when a court order has been obtained.[1] Beatty filed a motion in federal district court to compel his unshackling during expert evaluations. He argued, and maintains in this court, that the district court had jurisdiction under 18 U.S.C. § 3599. The district court denied the motion, concluding that it lacked jurisdiction to grant the requested relief.

The pertinent provisions of § 3599 are:

> (a)(1) Notwithstanding any other provision of law to the contrary, in every criminal action in which a defendant is charged with a crime which may be punishable by death, a defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services at any time either—
>
> (A) before judgment; or
>
> (B) after the entry of a judgment imposing a sentence of death but before the execution of that judgment;

---

[1] *See* Respondent's Amended Unopposed Motion to Compel, *Panetti v. Lumpkin*, No. 1:04-cv-00042 (W.D. Tex. June 29, 2022), ECF No. 265 (noting the rule requiring a court order for unshackling); Petitioner's Unopposed Emergency Motion to Compel, *Ricks v. Lumpkin*, 4:20-cv-01299-O (N.D. Tex. Mar. 4, 2022), ECF No. 25 (same); Respondent's Unopposed Motion to Compel, *Washington v. Lumpkin*, No. 4:07-cv-721 (S.D. Tex. Feb. 15, 2022), ECF No. 226 (same).

shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with subsections (b) through (f).

(2) In any post conviction proceeding under section 2254 or 2255 of title 28, United States Code, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with subsections (b) through (f).

. . .

(e) Unless replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant, each attorney so appointed shall represent the defendant throughout every subsequent stage of available judicial proceedings, including pretrial proceedings, trial, sentencing, motions for new trial, appeals, applications for writ of certiorari to the Supreme Court of the United States, and all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant.

(f) Upon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or the sentence, the court may authorize the defendant's attorneys to obtain such services on behalf of the defendant and, if so authorized, shall order the payment of fees and expenses therefor under subsection (g). No ex parte proceeding, communication, or request may be considered pursuant to this section unless a proper showing is made concerning the need for confidentiality. Any such proceeding,

communication, or request shall be transcribed and made a part of the record available for appellate review.

Even assuming a federal court had authority to act at some point to require a state actor to unshackle a prisoner during an expert evaluation (an issue on which I presently take no position), § 3599 does not indicate that it creates original jurisdiction in the federal courts to decide issues such as the terms of access to a prisoner. Suppose that a federal court authorizes funds for an expert to prepare testimony and a report to be presented to a state pardons and parole commission, but a state rule excludes that evidence, categorically, for some reason. Could the prisoner go directly to federal court and argue that the state rule should be ignored and that a federal court should order the pardons and parole commission to consider the testimony and expert report? The argument would be that § 3599 contemplates funds for competent and effective expert services, and if a state rule forecloses presentation of the expert's findings, there has been no effective right to the services of an expert. But even giving § 3599 a very generous reading, it does not authorize original proceedings in federal court to override or bypass a state rule altogether in the first instance.

There is no indication that Beatty sought any relief in state court. It does not appear that he brought a motion in state court to compel unshackling nor has he challenged in state court the application of the shackling rule either facially or as applied to him. Because no state court has had the opportunity to consider evidence as to why the state could or could not reasonably require Beatty to be shackled, I would not reach the question of whether § 3599 would authorize a federal court in an original proceeding to compel a state actor to unshackle a prisoner. I therefore concur in the judgment dismissing this appeal.