# United States Court of Appeals for the Fifth Circuit

———————————

No. 25-70011

———————————

United States Court of Appeals
Fifth Circuit

**FILED**

March 9, 2026

Lyle W. Cayce
Clerk

Isidro Miguel Delacruz,

*Petitioner—Appellee*,

*versus*

Eric Guerrero, *Director, Texas Department of Criminal Justice, Correctional Institutions Division*,

*Respondent—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 6:24-CV-13

———————————————————————

Before Southwick, Willett, and Oldham, *Circuit Judges*.

Per Curiam:*

Isidro Delacruz is a Texas death-row inmate seeking federal habeas relief. We need not recount the horrific facts underlying his conviction and sentence; they are set out elsewhere. *See Delacruz v. State*, No. AP-77079, 2023 WL 2290863, at *1–3 (Tex. Crim. App. Mar. 1, 2023). This interlocutory appeal concerns a narrow question: whether the district court

———————————————————

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

had the authority to order that Delacruz remain unrestrained during a mental-health evaluation.

Under Texas Department of Criminal Justice (TDCJ) policy, death-row inmates must be shackled during contact visits. Delacruz argues that this case requires an exception. He asserts that accurate psychological testing requires that he be fully unshackled, and he offers a doctor's note stating that a "comprehensive evaluation" requires that he "be free of any restrain[t]s" to allow "full range of motion." He further contends that the evaluation may support an ineffective-assistance claim in his ongoing habeas proceedings.

TDCJ does not object to an unshackled visit in principle—so long as Delacruz remains separated from the expert by a secure partition, consistent with established policy. Delacruz, however, sought more. He asked the district court to compel an unshackled and unpartitioned meeting. The district court granted that request.

TDCJ immediately appealed and moved to stay the district court's order. The district court denied a stay, and TDCJ renewed its request in this court. We granted a stay pending appeal.

Before us, TDCJ argues that the district court lacked authority to mandate an unshackled, unpartitioned meeting. We agree. The district court based its order on an incorrect reading of two sources. We therefore REVERSE the order and REMAND for further proceedings consistent with this opinion.

No. 25-70011

## I

At the outset, the parties dispute our jurisdiction. Delacruz contends that we lack authority to review the district court's order because it is not a "final decisio[n]" under 28 U.S.C. § 1291. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546–47 (1949). TDCJ counters that, although interlocutory, the unshackling order is immediately appealable under the collateral-order doctrine. *See id.* We agree with TDCJ. The order is conclusive, resolves an important question wholly separate from the merits, and would be effectively unreviewable after final judgment. *See Lewis v. Crochet*, 105 F.4th 272, 280 (5th Cir. 2024). We therefore have jurisdiction.

## A

First, the district court's order is conclusive. An order "conclusively determine[s]" the disputed question when it is "final as to only the one inquiry that the order determines," *NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*, 745 F.3d 742, 748 (5th Cir. 2014) (citing *Behrens v. Pelletier*, 516 U.S. 299, 307–08 (1996)), and when it is "unlikely that the district court will revisit the order." *Id.* (citations and internal quotation marks omitted).

Here, the district court directed prison officials to unshackle Delacruz's arms and hands during his mental-health evaluation. Nothing in the record suggests the court intends to reconsider that directive, which signals conclusiveness. *See Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 174 (5th Cir. 2009) ("The mere power to revisit an order, however, is insufficient to preclude a finding of conclusivity; it should be unlikely that the district court will revisit the order." (citation omitted)); *see* 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3911 (3d ed.) ("So long as there is a plain prospect that the trial court may itself alter the challenged ruling, there is little justification for immediate appellate intrusion. The bare

fact that the court has power to change its ruling, however, does not preclude review. It is enough that no further consideration is contemplated." (footnotes omitted)).

Delacruz asserts that prison officials may still restrain him if he misbehaves and that the court could sanction him for any misconduct. But that misses the point. The question is not whether prison officials may respond to danger when carrying out the order; it is whether the district court is likely to revisit its order itself. On that score, the answer is no. *See NCDR*, 745 F.3d at 748.

## B

Next, the district court's order resolves an important issue wholly separable from the merits of Delacruz's federal habeas claims. We may assess the propriety of the unshackling order without opining on the truth or viability of Delacruz's underlying habeas claims. *See Mitchell v. Forsyth*, 472 U.S. 511, 527–28 (1985). Whether a federal court may compel an unshackled, unpartitioned evaluation is a discrete, "conceptually distinct" question from the merits of the habeas action itself. *See id.* at 527.

The order also implicates substantial concerns—namely, institutional safety and the proper balance of authority between federal courts and state correctional systems. Those considerations underscore the separateness and importance of the issue.

## C

Last, the district court's order is effectively unreviewable after final judgment. "An order is not 'effectively unreviewable' just because it 'may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment.'" *Leonard v. Martin*, 38 F.4th 481, 486 (5th Cir. 2022) (quoting *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511

U.S. 863, 872 (1994)). Rather, an order qualifies when it "involves 'an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial.'" *Id.* (quoting *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799 (1989)).

So it is here. Once TDCJ carries out the district court's directive, the order will have done its work: Delacruz will have been unshackled, and those present during the evaluation will already have absorbed the risks and burdens associated with that decision. Those consequences cannot be unwound on appeal. As the Supreme Court has noted, "[s]uch an order creates public safety risks and burdens on the State that cannot be remedied after final judgment." *Shoop v. Twyford*, 596 U.S. 811, 817 n.1 (2022).

Accordingly, without immediate review, the order would be effectively unreviewable.

\*   \*   \*

Because the district court's unshackling order conclusively determines the disputed question, resolves an important question separate from the merits, and would be effectively unreviewable after final judgment, we have jurisdiction under the collateral-order doctrine. *See, e.g.*, *id.*; *see also id.* at 824 (holding that an order compelling a state prison to transport a prisoner was immediately appealable and reversing the order).

## II

The district court misapplied the law in ordering Delacruz's unshackling. We therefore REVERSE its order requiring an unshackled, unpartitioned mental-health evaluation and REMAND for proceedings consistent with this opinion.

The district court grounded its authority in two sources: the Supreme Court's decision in *Ayestas v. Davis*, 584 U.S. 28, 44–47 (2018), and the text

No. 25-70011

of 18 U.S.C. § 3599(g)(2). Delacruz identified a third—the All Writs Act, *see* 28 U.S.C. § 1651(a)—but the district court did not rely on that statute in its written order.

Neither *Ayestas* nor § 3599(g)(2) authorized the court to compel Delacruz's unshackling.

A

*Ayestas* does not assist Delacruz. Nothing in that decision suggests that a federal court may order state prison officials to unshackle an inmate for a mental-health evaluation. *Ayestas* addressed only the standard for obtaining funding for expert services. *See* 584 U.S. at 44–47. TDCJ's safety policy has nothing to do with funding and does not impede Delacruz's access to expert assistance; it governs only the restraints required during a contact visit. Limiting Delacruz's hand and arm movement during the evaluation does not contravene *Ayestas* in any way.

B

Next, the district court erred in granting Delacruz's motion under § 3599(g)(2). The court reasoned that it possessed authority "to ensure that a mental health evaluation funded by federal taxpayers is conducted in a reliable manner that produces professionally reliable results," and it invoked § 3599(g)(2) to justify ordering prison officials to unshackle Delacruz. But that statute provides no such authority. Section 3599(g)(2) is a funding provision—nothing in it empowers a court to regulate prison security or evaluation conditions.

We reproduce the text of § 3599(g)(2) in full:

Fees and expenses paid for investigative, expert, and other reasonably necessary services authorized under subsection (f) shall not exceed $7,500 in any case, unless payment in excess of that limit is certified by the court, or by the United States

6

magistrate judge, if the services were rendered in connection with the case disposed of entirely before such magistrate judge, as necessary to provide fair compensation for services of an unusual character or duration, and the amount of the excess payment is approved by the chief judge of the circuit. The chief judge of the circuit may delegate such approval authority to an active or senior circuit judge.

Relying on this language, the district court concluded that it "necessarily possesses" authority to ensure that Delacruz's mental-health evaluation—because it is federally funded—proceeds in a manner that protects taxpayer resources and yields professionally reliable results. But the statute cannot bear that interpretation.

As always, our inquiry "begins with the statutory text, and ends there as well if the text is unambiguous." *Tex. Educ. Agency v. U.S. Dep't of Educ.*, 908 F.3d 127, 132 (5th Cir. 2018) (quotation omitted); *see also United States v. Maturino*, 887 F.3d 716, 723 (5th Cir. 2018) (WILLETT, J.) ("Text is the alpha and the omega of the interpretive process."). And here, the text speaks plainly: § 3599(g)(2) sets out fee caps and procedures for approving excess payments. It does not authorize federal courts to dictate evaluation methods or override prison safety policies. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 16 (2012) ("Textualism . . . begins and ends with what the text says and fairly implies.").

In short, the statute does not remotely suggest what the district court inferred. Indeed, its very heading—"Counsel for financially unable defendants"—signals its focus: funding for appointed counsel. *See Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) ("[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute." (citations omitted)). The operative

text confirms that focus. Section 3599(g)(2) sets spending limits for "investigative, expert, and other reasonably necessary services," and describes how courts may authorize payments above the $7,500 cap. *See* 18 U.S.C. § 3599(g)(2). Nothing in it addresses evaluation protocols or testing conditions. The district court's asserted authority is therefore extratextual.

Nor does § 3599(g)(2) imply that federal courts may order a prisoner's unshackling during an evaluation. Our reasoning in *Beatty v. Lumpkin*, 52 F.4th 632 (5th Cir. 2022) (per curiam), applies with full force here. There, interpreting §§ 3599(e) and (f), we held that § 3599 "is a funding law, not a law that grants federal courts authority to oversee the scope and nature of federally funded legal representation." 52 F.4th at 634. And, as *Beatty* emphasized, no circuit court has held otherwise: § 3599 authorizes funding—nothing more. *Id.* at 638 (emphasis added); *see, e.g.*, *Leavitt v. Arave*, 682 F.3d 1138, 1141 (9th Cir. 2012) (per curiam); *Baze v. Parker*, 632 F.3d 338, 345 (6th Cir. 2011).

At bottom, Delacruz argues that a statute authorizing funding also authorizes judicial supervision of activities paid for with that funding. *Cf. Beatty*, 52 F.4th at 635–36. But "[t]his way of reading the law strays from the statute's text and into purported policy justifications," which we cannot do. *See id.* at 635. Because § 3599(g)(2) addresses only funding limits for expert services—not authority to manage evaluation conditions—it does not empower a district court to order an unshackled, unpartitioned evaluation.

No. 25-70011

C

Although Delacruz also invoked the All Writs Act, 28 U.S.C. § 1651(a), the district court's order never mentioned that statute.[1] We accordingly decline to address in the first instance whether the All Writs Act could supply authority here. *See Rutila v. Dep't of Transp.*, 12 F.4th 509, 511 n.3 (5th Cir. 2021) ("Mindful that we are a court of review, not of first view, we opt not to seek out alternative grounds on which we might uphold the judgment.") (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005) (internal quotation marks omitted)). On remand, the district court should consider Delacruz's All Writs Act argument in the first instance. *See, e.g.*, *Montano v. Texas*, 867 F.3d 540, 546–47 (5th Cir. 2017).

\*     \*     \*

We therefore REVERSE the district court's unshackling order and REMAND for the district court to consider Delacruz's All Writs Act argument.

---

[1] The All Writs Act allows federal courts to issue all writs "necessary or appropriate in aid of their respective jurisdictions." *See* 28 U.S.C. § 1651(a). A court order "that allows a prisoner to search for new evidence is not 'necessary or appropriate in aid of' a federal court's adjudication of a habeas corpus action when the prisoner has not shown that the desired evidence would be admissible in connection with a particular claim for relief." *Twyford*, 596 U.S. at 824 (quoting 28 U.S.C. § 1651(a)). When the All Writs Act is asserted as a "vehicle for gathering new evidence," the district court must "determine at the outset whether the new evidence sought could be lawfully considered." *Id.* at 820 (citing 28 U.S.C. § 2254 *et seq.*).